JUSTICE WHEAT
delivered the Opinion of the Court.
¶1 Defendant Allstate Insurance Company (Allstate) appeals the order of the Eighth Judicial District Court, Cascade County, granting Plaintiff Robert J acobsen’s (J acobsen) motion for class certification. W e affirm the class certification but modify the certified class relief on remand.
ISSUES
¶2 We restate the issues on appeal as follows:
¶3 1. Whether the District Court abused its discretion by finding that the proposed class met the requirements of M. R. Civ. P. 23(a)?
¶4 2. Whether the District Court abused its discretion by certifying a M. R. Civ. P. 23(b)(2) class action lawsuit?
¶5 3. Whether the District Court erred by holding that the Montana Rules of Evidence do not apply to class action proceedings?
FACTUAL AND PROCEDURAL BACKGROUND
¶6 This interlocutory appeal arises from the District Court’s order certifying a class in Jacobsen’s class action against Allstate. Jacobsen’s class action claim in turn arose out of our remand of his initial non-class third-party claim against Allstate in Jacobsen v. Allstate Ins. Co., 2009 MT 248, 351 Mont. 464, 215 P.3d 649 (Jacobsen I). As we recounted in Jacobsen I, Jacobsen suffered bodily injuries and property damage in an automobile accident caused by Allstate’s insured in 2001. Allstate admitted liability and negotiated a settlement with Jacobsen while he was unrepresented by counsel. Allstate’s adjuster, Chuck Conners (Conners) used Allstate’s Claim Core Process Redesign (CCPR) program to process Jacobsen’s claim. The CCPR is a system of claims adjusting guidelines that Allstate implemented in 1995 to fast track settlements and reduce the amount paid out on claims. Conners utilized the general outlines of the CCPR in settling Jacobsen’s claim. The program facilitated a quick, unrepresented settlement six days after the accident for $3,500 and 45 days of “open” medical payment. As part of the settlement, Jacobsen signed a release.
¶7 Roughly three weeks later, Jacobsen began experiencing significant pain. Jacobsen contacted Conners and asked him to reconsider the release and provide additional assistance. Conners refused because Jacobsen had signed a release. Jacobsen retained counsel, who successfully persuaded Allstate to rescind the release and *396 re-open Jacobsen’s claim. Due to the efforts of Jacobsen’s newly-hired attorney, Allstate settled Jacobsen’s claim for $200,000 on November 27,2002, roughly 18 months after his initial, unrepresented settlement for $3,500.
¶8 Thereafter, Jacobsen retained new counsel and filed a complaint against Allstate seeking compensatory damages for various violations of the Montana Unfair Trade Practices Act (UTPA), common law bad faith, intentional and negligent infliction of emotional distress (IIED and NIED respectively), and also seeking punitive damages pursuant to § 27-1-221, MCA. Jacobsen ultimately sought compensatory damages based on the attorney fees he incurred in pursuing his underlying claim and punitive damages based on Allstate’s alleged malicious conduct.
¶9 The jury returned a verdict in favor of Jacobsen on October 19, 2006, finding Allstate liable for common law and statutory bad faith and awarding Jacobsen $68,372.38 in compensatory damages. The jury specifically found that Allstate violated the UTPA by misrepresenting pertinent facts regarding the claim and neglecting to attempt in good faith to promptly, fairly, and equitably settle a claim in which liability was reasonably clear. The jury also awarded Jacobsen $350,000 in punitive damages based on its finding that Allstate acted with actual malice.
¶10 Following the verdict, both Jacobsen and Allstate appealed various rulings by the District Court. Our resolution of these appeals comprises Jacobsen I. One issue under consideration in Jacobsen I concerned the discovery of what were termed the ‘McKinsey documents.” The McKinsey documents consist of around 12,500 PowerPoint slides produced by McKinsey & Company (McKinsey), a management consulting firm, for Allstate. The CCPR program is a distillation of the studies and recommendations contained in the McKinsey documents, and they consequently provide a more complete understanding of the program. However, Jacobsen was unaware of the existence of the McKinsey documents at the time of his initial discovery request or motion to compel production of the CCPR. When he became aware of them, Jacobsen sought leave of the court to assert new individual and class action claims against Allstate and to pursue additional discovery. The District Court denied these requests, finding that they would “cause substantial prejudice and undue delay, burden, and expense^]” Jacobsen I, ¶ 55.
¶ 11 In his pre-remand appeal, Jacobsen argued that the District Court erred by denying his request for further discovery. We found that because “the issue before the District Court was not whether to re-open *397 discovery, but whether to compel Allstate to produce documents that were within J acobsen’s original discovery request,[1]”it was “unnecessary to determine whether Jacobsen demonstrated due diligence or excusable neglect[.]” Jacobsen 1, ¶ 57. We concluded “[t]he McKinsey documents were indeed critical to Jacobsen’s theory that Allstate’s policies regarding unrepresented claimants constituted bad faith” and reversed the District Court’s decision. Jacobsen I, ¶ 58.
¶12 We ultimately remanded the case for a new trial, finding that the jury’s award of compensatory damages could not be based solely on Jacobsen’s incurred attorney costs and fees and that there could be no punitive damages following this reversal of the compensatory damages award. We also ordered the court to allow the jury to consider Jacobsen’s emotional distress damages and directed the District Court to compel the production of the McKinsey documents. Jacobsen I, ¶ 67.
¶13 On remand, bolstered by the production of the McKinsey documents, J acobsen filed a motion for leave to file a Fourth Amended Complaint that added class action claims concerning Allstate’s CCPR program. Count Four of Jacobsen’s Fourth Amended Complaint, filed May 6, 2010, contained the newly-added class action claims. Jacobsen based the class claims on his prior individual theories asserting violations of the UTPA[1] and common law bad faith. Specifically, Count Four alleged that Allstate’s CCPR program violated the UTPA “and/or common law bad faith laws” by intentionally misrepresenting that unrepresented claimants generally received more compensation than represented claimants and by settling unrepresented claims via an inadequate ‘fast track” component of the CCPR that resulted in unfair settlements. Count Four asserted these claims on behalf of “all unrepresented individuals who had either third party claims or first party claims against Allstate whose claims were adjusted by Allstate in Montana using its CCPR program.”
¶14 Count Five presented a claim for a common fund recovery of attorney fees incurred in pursuing the class action, and Count Six presented a claim for attorney fees as a ‘Private Attorney General” by asserting that the State of Montana had failed to enforce §§ 33-18-201(1) and (6), MCA. Regarding class relief, Jacobsen requested class *398 certification, injunctive relief prohibiting Allstate from using the CCPR program in Montana, an injunction requiring Allstate to “re-open all claims in which liability was reasonable [sic] clear in which the Defendant applied the CCPR paradigm in settling such cases,” an injunction requiring Allstate to disgorge unlawful profits, the award of punitive damages, and attorney fees.
¶15 Jacobsen filed a motion for class certification on May 7, 2010, proposing a class definition encompassing “all unrepresented individuals who had either third-party claims or first-party claims against Allstate whose claims were adjusted by Allstate in Montana using its CCPR program.”
¶16 The District Court certified a Rule 23(b)(2) class in its methodical June 30, 2012 Order. In the course of its analysis, the Court noted the United States Supreme Court’s admonition in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551-52 (2011), to conduct a ‘Vigorous”Rule 23 analysis. The Court also construed the substantive essence of Plaintiffs asserted class claim to be, irrespective of individual outcomes, that the CCPR’s settlement practices “constitute a common pattern and practice in violation of §§33-18-201(1) and (6), MCA, as generally applied to the class as a whole, thereby resulting in indivisible harm to the class as a whole ....” The court accordingly certified the following class claim:
(A) the Casualty CCPR’s unrepresented segment adjusting practices are a common pattern and practice in violation of §§33-18-201(1) and (6), MCA, as generally applied to the class of unrepresented claimants as a whole;
(B) Allstate’s common, systematic use of this pattern and practice in Montana caused indivisible harm to the class as a whole by operation of its zero-sum economic theory and the resulting inversely proportional relationship between Allstate profit increases and corresponding decreases in the total amount of compensation paid to the class of unrepresented claimants as a whole; and
(C) Allstate acted with “actual malice,” as defined by § 27-1-221(2), MCA, by intentionally, deliberately, and consciously creating and disregarding a high probability that the net effect of its Casualty CCPR’s unrepresented segment practices would result in net settlement payouts to the class as a whole less than the net amount previously sufficient to fully and fairly settle unrepresented claims under Montana law[.]
As support, the Court found that Jacobsen had proffered “substantial credible evidence” that Allstate systematically adjusted unrepresented *399 first and third-party claims involving bodily injury or property damage "in the same general manner” under the CCPR program. The Court thus rejected Allstate’s claim that Jacobsen could not establish that all unrepresented claimant’s settlements were unfair by reasoning that Jacobsen’s claims concerned the "preliminary manner, means, and course of adjustment systematically applied to the class as a whole in the context of the insurer’s duties under §§ 33-18-201(1) and (6), MCA,” and not the "ultimate outcomes” of individual claims.
¶17 The Court restructured Jacobsen’s class definition as follows:
(1) all unrepresented claimants who made first-party or third-party claims to Allstate;
(2) for an amount in excess of the applicable policy deductible;
(3) for bodily injury or property damage related to an underlying motor vehicle incident or occurrence; and
(4) whose claims were adjusted by Allstate in Montana to an unrepresented settlement since deployment in Montana of the various versions of the Casualty CCPR (CCPR Implementation Manual (Tort States)).
The Court considered this reformed definition to be “sufficiently precise and homogenous for purposes of Rule 23.”Using this reformed class definition the Court determined that Jacobsen’s class claim satisfied Rule 23(a)’s four prerequisites-numerosity, commonality, typicality, and adequacy. The Court certified Jacobsen’s claim as a Rule 23(b)(2) class action and certified the following class action remedies as available upon proof of the certified class claim:
(A) [a] declaratory judgment adjudicating the constituent assertions of the certified class claim [which we have recounted in ¶ 16];
(B) [a] mandatory injunction requiring Allstate to:
(1) give all class members court-appointed notice of the right and opportunity to obtain re-opening and re-adjustment of their individual claims by timely returning a proof of claim form; and
(2) re-open and re-adjust each individual claim upon receipt of a timely filed proof of claim;
(C) class-wide punitive damages pursuant to §§27-1-220 and 27-1-221(2), MCA (actual malice), predicated on the above-referenced class-wide conduct; and
(D) common fund recovery of class action attorney fees and costs upon a class-wide punitive damages award[.]
Allstate appeals the court’s certification of Jacobsen’s class claims *400 pursuant to Rule 23[2] as well as the court’s consideration of what Allstate argues was inadmissible evidence during the certification proceedings.

Allstate’s CCPR Program and the McKinsey Documents.

¶18 Due to Jacobsen’s contention that Allstate’s application of the CCPR program to unrepresented claimants amounts to statutory and common law bad faith, a brief summary of the program, and the related McKinsey documents, is in order.
¶19 Allstate hired McKinsey in the early 1990’s to help redesign its claims process. This redesign was prompted by Allstate’s recognition that while claims expenses were low, total payouts were increasing at a pace above the industry average. The McKinsey documents outlined a claim settlement process, like the CCPR program, to lower claims payouts by increasing claimant contact and reducing attorney involvement. McKinsey essentially advocated ‘increasing the number of early unrepresented settlements” while ‘holding the line” on represented claims. This focus flowed from research showing that represented claims settled for 2-3 times more than unrepresented claims, that Allstate claims adjusters were not effectively initiating early contact or communicating with claimants, and that this failure to promptly and effectively communicate with claimants made claimants more likely to hire lawyers. The McKinsey documents ultimately styled claims adjusting as a ‘kero sum” economic game where if Allstate gains by reducing settlements, others-including “medical providers, plaintiff attorneys, and claimants’-inust lose.”
¶20 Allstate’s CCPR program consequently strives to reduce overall claims payouts by establishing a more centralized, regimented claims adjusting process focused on quick claimant contact, building rapport, reducing claimant representation rates, and shuttling certain claims into a ‘fast track” system. Allstate applies the CCPR to both third and first-party claimants.
¶21 Here, Allstate’s adjuster, Conners, utilized the CCPR program to obtain a fast track, unrepresented, reduced payment settlement of Jacobsen’s claim. Jacobsen alleges that the CCPR program systematically violates the rights of unrepresented claimants as provided to them by the UTPA. Jacobsen specifically takes issue with the application of the CCRP’s ‘fast track” system, ‘9-step process,’’and “attorney economics script” to his claim.
*401 ¶22 First, the “fast track” system seeks to promote settlement with claimants within 12 days of the accident. Jacobsen alleges that the system promotes quick settlements at the expense of fair settlements. A ‘Fast Track Evaluation Worksheet” controls whether a claim is amenable to ‘fast track” processing and requires: the claimant is unrepresented, there are no coverage questions, there are only soft tissue injuries and a good prognosis, no residuals, no aggravation of preexisting conditions, and treatment for less than 60 days. In this case, after Jacobsen accepted the initial $3,500 settlement, Conners processed Jacobsen’s claim under the CCPR’s ‘fast track” guidelines for unrepresented claims.
¶23 Second, Conners generally utilized the ‘9-step process” for unrepresented claimant contact. The CCPR’s Initial Claimant Contact Outline for unrepresented claimants directs adjusters to: (1) establish empathy and gather injury facts; (2) confirm Allstate’s customer service pledge; (3) gather loss facts; (4) confirm Allstate’s liability decision; (5) discuss payment of medical bills and lost wages; (6) assist with car repairs; (7) assist with alternate transportation; (8) explain the bodily injury settlement process and discuss attorney economics; and (9) close the claim and follow-up. Jacobsen alleges the 9-step process increases Allstate’s profits at the expense of good faith settlements.
¶24 Third, in accordance with the CCPR, Conners discussed attorney economics with Jacobsen. The CCPR process explicitly seeks to reduce the number of represented claims to reduce claims payouts. This goal was motivated by Allstate’s determination that represented claimants typically settled for 2-3 times (and perhaps up to 5 times) the amount unrepresented claimants received. To reduce attorney involvement, the CCPR aims to build rapport with claimants though quick, empathetic contact, and directs adjusters to utilize an “attorney economics script.” The script states:
[qjuite often our customers ask if an attorney is necessary to settle a claim. Some people choose to hire an attorney, but we would really like the opportunity to work directly with you to settle the claim.
Attorneys commonly take between 25-40% of the total settlement you receive ... plus expenses incurred. If you settle directly with Allstate, however, the total amount of the settlement is yours.
At any time in the process you may choose to hire an attorney. I would, however, like to make an offer to you first. This way, should you go to an attorney, you would be able to negotiate with the attorney so his/her fees would only apply to amounts over my *402 offer to you.
The script’s instructions counsel against improperly dissuading claimants from seeking representation and instruct adjusters to remind claimants that they are free to hire an attorney at any time and discuss the relevant statute of limitations. However, the script does not contain information advising that Allstate found that represented claimants generally received higher settlements. Jacobsen alleges Allstate’s portrayal of “attorney economics” induced him into believing unrepresented claimants generally received more compensation for injuries and resulted in an initially unfair settlement.
STANDARD OF REVIEW
¶25 We afford trial courts the broadest discretion when reviewing a decision on class certification. Sieglock v. Burlington Northern & Santa Fe Ry. Co., 2003 MT 355, ¶ 8, 319 Mont. 8, 81 P.3d 495. This is because the trial court ‘is in the best position to consider the most fair and efficient procedure for conducting any given litigation.” Chipman v. Northwest Healthcare Corp., 2012 MT 242, ¶ 17, 366 Mont. 450, 288 P.3d 193. We will therefore not upset the District Court’s decision without finding an abuse of discretion. In conducting this review we do not ask whether we would have reached the same decision, but instead ask whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason. Newman v. Lichfield, 2012 MT 47, ¶ 22, 364 Mont. 243, 272 P.3d 625. However, ‘“[t]o the extent that the ruling on a Rule 23 requirement is supported by a finding of fact, that finding, like any other finding of fact, is reviewed under the ‘clearly erroneous’ standard. And to the extent that the ruling involves an issue of law, review is de novo.’ ” Mattson v. Mont. Power Co., 2012 MT 318, ¶ 17, 368 Mont. 1, 291 P.3d 1209 (Mattson III) (quoting Miles v. Merrill Lynch & Co., 471 F.3d 24, 40-41 (2d Cir. 2006)).
DISCUSSION
¶26 1. Whether the District Court abused its discretion by finding that the proposed class met the requirements ofM. R. Civ. P. 23(a)?
A. Rule 23(a)
¶27 Initially, a class action claim is “‘an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.’ ” Mattson III, ¶ 18 (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01, 99 S. Ct. 2545 (1979)). Departure from the usual rule is justified if the class representative is part of the class and possesses the same interest and suffers the same injury as the class members. *403 East Tex. Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S. Ct. 1891 (1977). In this way, class action suits save the resources of courts and parties “ ‘by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.’ ” Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 155, 102 S. Ct. 2364 (1982) (quoting Califano, 442 U.S. at 701).
¶28 Rule 23 of the Montana Rules of Civil Procedure governs certification of a class action and ensures that the named plaintiffs are appropriate representatives of the class. Because the Montana version of Rule 23 is identical to the corresponding federal rule, federal authority is instructive, but Montana courts are not required to march lockstep with federal interpretations of Fed. R. Civ. P. 23. Chipman, ¶ 43. The four requirements found in Rule 23(a) provide the threshold inquiry courts engage in when considering a putative class. Specifically, Rule 23(a) requires that:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.
These prerequisites are intended to protect the due process rights of absent class members, Hansberry v. Lee, 311 U.S. 32, 42-43, 61 S. Ct. 115 (1940), and failure to establish any element of Rule 23(a) is fatal to class certification. Chipman, ¶ 43.
¶29 Moreover, we have recently adopted the following guidelines in an attempt to provide further clarification of Rule 23’s proper standard of review:
(1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district *404 judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.
Mattson v. Mont. Power Co., 2009 MT 286, ¶ 67, 352 Mont. 212, 215 P.3d 675 (Matson II). Our application of these guidelines to the District Court’s certification order in this case leads us to the conclusion that the District Court did not abuse its discretion by certifying Jacobsen’s proposed class. The District Court based its class certification on a meticulous review of the evidence behind the pleadings. As class certification requires that the plaintiff satisfy all four requirements of Rule 23(a), we will address each requirement in turn.
i. Numerosity-Rule 23(a)(1)
¶30 As noted, Rule 23(a)(1) requires that the proposed class be “so numerous that joinder of all members is impracticable.” Here, the Court found that Jacobsen, using the deposition of Allstate Agent Conners, “reasonably estimated the size of the first proposed class [in Jacobsen I\ at around 600 members.” Because Jacobsen had enlarged the class post-remand by adding first-party claimants and automobile-related property damage claims, the Court concluded that the post-remand class met Rule 23(a)(l)’s numerosity requirement. Allstate does not challenge this conclusion on appeal.
ii. Commonality-Rule 23(a)(2)
¶31 Allstate does contest the Court’s finding that the proposed class satisfied the commonality requirement of Rule 23(a)(2). Rule 23(a)(2) requires “questions of law or fact common to the class.” Because the requirements of the rule are disjunctive, a party seeking class certification must have either common questions of law or fact, and total commonality is not required. Sieglock, ¶ 11. The commonality requirement has therefore generally been seen as a relatively low burden for plaintiffs. See Diaz v. Blue Cross & Blue Shield, 2011 MT 322, ¶ 32, 363 Mont. 151, 267 P.3d 756 (quoting LaBauve v. Olin Corp., 231 F.R.D. 632, 667-68 (S.D.Ala. 2005)) (commonality requirement is met when a single issue is common to all class members); Ferguson v. Safeco Ins. Co. of Am., 2009 MT 109, ¶ 26, 342 Mont. 380, 180 P.3d 1164 (citing LaBauve, 231 F.R.D. at 668) (commonality ‘is not a stringent threshold and does not impose an unwieldy burden on plaintiffs.”); McDonald v. Washington, 261 Mont. 392, 401, 862 P.2d 1150 (quoting Jordan v. County of Los Angeles, 669 F.2d 1311, 1320 (9th Cir. 1982)).
¶32 As these cases indicate, we have a ‘long history of relying on *405 federal jurisprudence when interpreting the class certification requirements of Rule 23.” Chipman, ¶ 52. Federal Rule 23(a)(2) jurisprudence was further developed in 2011 by the U.S. Supreme Court in Wal-Mart v. Dukes. The Wal-Mart decision has raised the dual questions of whether it plots a new course for “commonality” analysis and if this course materially differs from our own. We first considered Wal-Mart’s treatment of Rule 23(a)(2) in Chipman. There, we recognized that the Wal-Mart decision had departed from our heretofore “minimal standard” and had “significantly tightened the commonality requirement.” Chipman, ¶¶ 47-48. We then applied the Wal-Mart decision’s “reasoning” concerning Rule 23(a)(2) and upheld the class certification order. Chipman, ¶¶ 47, 52. We next considered Rule 23(a)(2) and Wal-Mart two months later in our Mattson III decision. There, we again referenced the Supreme Court’s apparent tightening of Federal Rule 23(a)(2)’s requirements and noted “a recent divergence between the federal approach and Montana’s approach to the commonality requirement.” Mattson III, ¶ 35. However, despite our application of Wal-Mart’s “reasoning” in Chipman, the Mattson III decision portrayed our decision to follow Wal-Mart’s interpretation of Rule 23(a)(2) as an open question best left for some “future case.” Mattson III, ¶ 37. Despite disclaiming our adoption of Wal-Mart’s commonality reasoning, Mattson III still analyzed, and upheld, the District Court’s class certification pursuant to the supposedly “more stringent” federal standard. Mattson III, ¶ 37.
¶33 As Justice Baker observed in her dissenting opinion in Mattson III, our varying embrace of Wal-Mart in Chipman and Mattson III perhaps ‘introduced] confusion into our class certification standards ...” Mattson III, ¶ 45 (J. Baker, dissenting). Our opinion in Mattson III recognized this, and we determined that “[i]t may be necessary in a future case-where the issue is properly briefed and argued, and the choice of one standard over the other is dispositive of the commonality inquiry-to decide whether Montana w ill retain its more permissive approach or instead adopt the Wal-Mart majority’s approach.”Mattson III, ¶ 37. This, however, is not that future case. Neither Jacobsen’s nor Allstate’s arguments hinge on the potential differences between WalMart’s and Montana’s approaches to commonality. Moreover, the District Court applied Wal-Mart in its order certifying the class. Because we affirm the District Court’s certification of the class decision under Wal-Mart, the choice of one standard over the other is not dispositive. We therefore need not decide whether Montana will retain its approach to commonality or how these approaches differ, and we *406 will proceed with a discussion of Jacobsen’s proposed class in the context of Wal-Mart.
a. Wal-Mart and F. R. Civ. P. 23(a)
¶34 In Wal-Mart, the U.S. Supreme Court considered a proposed class of 1.5 million current and former female Wal-Mart employees “who [alleged] that the company discriminated against them on the basis of their sex by denying them equal pay or promotions ....” Wal-Mart, 131 S. Ct. at 2547.[3] There, as here, the Court dealt with the requirements of the identical Federal Rule 23(a)(2). To satisfy the commonality requirement, the plaintiffs had proffered statistical evidence about pay and promotion disparities between genders, anecdotal reports of discrimination from female employees, and the expert testimony of a sociologist. The District Court reviewed this evidence and certified the proposed class. Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 145, 2004 U.S. Dist. LEXIS 11297 (N.D. Cal. 2004). In the course of its Rule 23(a) analysis, the District Court noted that “the party seeking certification must provide certain facts sufficient to satisfy Rule 23(a),” that “the court’s analysis [of Rule 23] must be rigorous,” and that‘“the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff s cause of action.’ ’’Dukes, 222 F.R.D. at 143-44. Wal-Mart opposed the commonality finding largely by advancing the unique nature of individual stores and its practice of giving local managers substantial discretion in pay and promotion decisions. Dukes, 222 F.R.D. at 151.
¶35 Wal-Mart appealed the class certification, contesting, inter alia, the District Court’s conclusion that the class met the commonality requirement. The Ninth Circuit affirmed after granting a re-hearing en banc. See Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010). Wal-Mart again appealed and the U.S. Supreme Court granted certiorari, issuing its opinion in 2011. The majority considered the *407 decision on commonality to be the “crux” of the case and engaged in an analysis of Federal Rule 23(a)(2)’s requirements. The Court attempted to clarify the application of Rule 23(a)(2)’s language and establish the proper standard of Rule 23(a)(2) adjudication. For our purposes, this clarification produced two important holdings, the first concerning the sufficiency of a plaintiffs common contentions and the second regarding the proper, “rigorous” level of Rule 23(a) analysis. We will examine these clarifications in turn.
¶36 First, the majority cautioned that the language of the commonality rule is “easy to misread, since ‘[a]ny competently crafted class complaint literally raises common ‘questions.’ ”Wal-Mart, 131 S. Ct. at 2551 (citation omitted). Thus, the majority sought to clarify what sort of common questions of law or fact satisfy Rule 23(a)(2). The majority emphasized that plaintiffs may not merely raise droves of superficial common questions (providing ‘Do all of us plaintiffs indeed work for Wal-Mart?” as an example). Instead, the plaintiffs’ common legal or factual contentions must “demonstrate that the class members ‘have suffered the same injury’ ”by asserting a common contention “of such a nature that it is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.” Wal-Mart, 131 S. Ct. at 2551.[4] This emphasis logically flows from the Court’s prior justification of the class-action device’s departure from the usual rule of individual litigation: ‘^permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.” Falcon, 457 U.S. at 155 (quoting Califano, 442 U.S. at 700-01).
¶37 Second, the Supreme Court sought to clarify what it saw as an inconsistent, and inadequate, level of Rule 23(a) review in the lower federal courts. In doing so, the Wal-Mart decision embraced what has been termed a “rigorous” form of Rule 23(a) analysis. A “rigorous” level of Rule 23(a) analysis was previously adopted by a majority of the federal Circuit Courts, and the ‘inore rigorous” approach adopted by the Second, Fourth, Fifth, Seventh, and Ninth Circuits requires district courts to make specific findings that each requirement of Rule 23(a) has actually, not presumably, been met. Dukes, 603 F.3d at 583. The Wal-Mart decision adopted the ‘inore rigorous” approach, as *408 district courts may certify a class “only if’ they are satisfied that the prerequisites of Rule 23(a) have actually been satisfied. Wal-Mart, 131 S. Ct. at 2551. Further, in the course of making the required determination that Rule 23(a) has actually been satisfied, “‘sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.’ ” Wal-Mart, 131 S. Ct. at 2551 (quoting Falcon, 457 U.S. at 160). Thus, to the Wal-Mart majority, a proper “rigorous” Rule 23(a) analysis specifically requires that the district court determine each requirement of Rule 23(a) has been actually met and allows, but does not require, the district court to probe beyond the pleadings and touch aspects of the merits to make this determination. See Wal-Mart, 131 S. Ct. at 2551.
¶38 The Wal-Mart majority’s application of the clarified commonality requirement provides some further insight into its Rule 23(a)(2) analysis. Because the plaintiffs’ class áction alleged a company-wide policy of gender discrimination in violation of Title VII, the Supreme Court recognized that “proof of commonality necessarily overlaps with respondents’ merits contentions that Wal-Mart engages in a pattern or practice of discrimination.” Wal-Mart, 131 S. Ct. at 2552. The majority viewed the size of the class and disparate nature of Wal-Mart’s employment decisions as particular problems, and determined that ‘Twjithout some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members’ claims for relief will produce a common answer to the crucial questions why was I disfavored.” Wal-Mart, 131 S. Ct. at 2552. To provide this glue, the majority required the plaintiffs to prove that a company-wide policy existed. The majority accordingly reviewed the plaintiffs’ proffered evidence and concluded that it could not prove that a company-wide policy existed. Wal-Mart, 131 S. Ct. at 2553-57. Thus, the Supreme Court probed beyond the pleadings to determine a merits issue^whether Wal-Mart even had a company-wide pay or promotion policy-to determine if the plaintiffs could present a common contention amenable to classwide resolution. Unlike the present case, because the plaintiffs could not prove a uniform plan or policy, they could not present the question of whether they, and the proposed class members, had suffered a common injury as a result.[5]
*409 b. Jacobsen’s Proposed Class and the District Court’s Rule 23(a)(2) Decision
¶39 Here, the District Court applied the Wal-Mart decision’s reasoning that the asserted class claim must depend upon a common contention that will resolve an issue that is central to the validity of each member’s claim. In applying this standard, the District Court looked beyond the allegations of Jacobsen’s pleadings to find: (1) that Jacobsen had produced “significant proof’ that Allstate intentionally and systematically failed to disclose that represented claimants received settlements 2-3 times larger than unrepresented claimants; (2) that Allstate developed the CCPR with the intent that it would reduce the net sum of unrepresented settlements; (3) that Allstate hid this profit motive by developing the facially neutral CCPR; (4) that Allstate consciously disregarded a high probability that the net effect of the CCPR would result in less than a full and fair settlement; and (5) that the CCPR program had resulted in “a substantial, objectively measurable reduction in the total amount of compensation paid to the class of unrepresented claimants as a whole ....’’The Court concluded *410 that these factual showings united Jacobsen and the class member’s claims and supported the following common questions of law and fact, asking whether:
(1) the Casualty CCPR’s unrepresented segment adjusting practices are a common pattern and practice in violation of §§33-18-201(1) and (6), MCA, as generally applied to the class of unrepresented claimants as a whole;
(2) Allstate’s common, systematic use of this pattern and practice in Montana caused indivisible harm to the class as a whole by operation of its zero-sum economic theory and the resulting inversely proportional relationship between
Allstate profit increases and corresponding decreases in the total amount of compensation paid to the class of [sic] as a whole; and[6]
(3) Allstate has consciously disregarded a high probability that the net effect of its Casualty CCPR’s unrepresented segment practices would result in net settlement payouts to the class as a whole less than the net amount previously sufficient to fully and fair[ly] settle unrepresented claims under Montana law.
Despite potential factual disputes, the Court determined that Jacobsen’s proposed class action would provide the sort of “common answers” concerning the CCPR program that Wal-Mart encouraged. See Wal-Mart, 131 S. Ct. at 2551. Indeed, because the presence of a common pattern and practice is undisputed, Jacobsen’s common contentions do not suffer from the same defect as did the plaintiffs’ contentions in Wal-Mart.
¶40 On appeal, Allstate first argues that because Jacobsen’s claim is not predicated upon an assertion that his third-party bodily injury or property damage claims were ultimately settled unfairly or underpaid, there is no commonality between his claim and the alleged class claims. However, this argument misses the thrust of Jacobsen’s class claim on remand. While Jacobsen’s requested relief and alleged bases for damages are not entirely clear, the District Court determined that his claim asserts, in part, that Allstate’s application of the CCPR to unrepresented claims is a per se violation of the UTPA and results in actual harm in the form of an alleged zero-sum economic plan systematically reducing claims payments to increase profits. This contention does not merely allege that the proposed class members *411 suffered a violation of the same provision of law “in many ways.” See Wal-Mart, 131S. Ct. at 2551. Here, the presence of a “general business practice,” the CCPR, is undisputed. Whether this general practice, as applied to unrepresented claimants, violates § 33-18-201(1) or (6), MCA, is just the sort of question that may efficiently drive the resolution of the litigation. See Wal-Mart, 131 S. Ct. at 2551 (commonality requires the plaintiff to demonstrate that the class members ‘have suffered the same injury.”). This determination would not turn on the countless discretionary decisions that troubled the Wal-Mart majority, and would not be hampered by a variety of unique defenses and circumstances. Jacobsen’s assertion that the CCPR, as applied to the class members, represents a per se violation of the UTPA would resolve a necessary, central question applicable to all class members.
¶41 Judge Richard Posner’s treatment of the Rule 23(b)(2) class certification at issue in McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482 (7th Cir. 2012) supports this conclusion. There, plaintiffs filed a class action suit alleging that Merrill Lynch engaged in a system of racial discrimination by utilizing a company policy that allowed brokers to form teams and that then rewarded team performance with increased broker account distributions. McReynolds, 672 F.3d at 483, 489-90.[7] The plaintiffs asked that the class be certified to determine whether the defendant had engaged in discriminatory practices and to provide injunctive relief. The plaintiffs also wanted compensatory and punitive damages. McReynolds, 672 F.3d at 483. The district court denied class certification and the plaintiffs appealed. On appeal, Judge Posner considered the denied certification in the context of Wal-Mart. McReynolds, 672 F.3d at 488. Judge Posner found that, unlike the Wal-Mart plaintiffs, Merrill Lynch’s policies were an employment decision by the top management *412 that was appropriate for a class-wide determination as to whether the challenged policies had a disparate racial impact. McReynolds, 672 F.3d at 489.
¶42 Judge Posner reversed the district court’s denial of class certification despite his recognition that a final resolution of the class’s claims would require hundreds of separate trials to determine compensatory and punitive damages. As Judge Posner noted,
[o]bviously a single proceeding, while it might result in an injunction, could not resolve class members’ claims. Each class member would have to prove that his compensation had been adversely affected by the corporate policies, and by how much. So should the claim of disparate impact prevail in the class-wide proceeding, hundreds of separate trials may be necessary to determine which class members were actually adversely affected by one or both of the practices and if so what loss he sustained-and remember that the class has 700 members. But at least it wouldn’t be necessary in each of those trials to determine whether the challenged practices were unlawful.
McReynolds, 672 F.3d at 490-91 (emphasis added). To Judge Posner, Tt]he kicker is whether ‘the accuracy of the resolution’ would be ‘unlikely to be enhanced by repeated proceedings.’ ’’McReynolds, 672 F.3d at 491. As the Seventh Circuit previously said in Mejdrech v. Met-Coil Systems Corp., 319 F.3d 910 (7th Cir. 2003),
If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings.
Mejdrech, 319 F.3d at 911. A single class trial for injunctive relief that determines the legality of a commonly applied procedure or policy is not only economical and attractive, but, in the alternative, Ttjhere isn’t any feasible method ... for withholding injunctive relief until a series of separate injunctive actions has yielded a consensus for or against the plaintiffs.” McReynolds, 672 F.3d at 491; see also Wal-Mart, 131 S.Ct at 2557 (“[T]he key to the (b)(2) class is the, indivisible nature of the injunctive or declaratory remedy warranted-fehe notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them,”).
¶43 Regarding the class’s requested monetary relief, Judge Posner recognized “there may be no common issues,” and determined “in that event the next stage of the litigation, should the class-wide issue be *413 resolved in favor of the plaintiffs, will be hundreds of separate suits for backpay (or conceivably for compensatory damages and even punitive damages as well ....).” McReynolds, 672 F.3d at 492. The Court approved of this bifurcated approach, determining declaratory and injunctive relief in a class trial and individual monetary relief in later individual trials, because “the lawsuits will be more complex if, until issue or claim preclusion sets in, the question whether Merrill Lynch has violated the antidiscrimination statutes must be determined anew in each case.” McReynolds, 672 F.3d at 492. As the D.C. Circuit recently noted, “[t]he pututative [sic] class in McReynolds was appropriate post-Wal-Mart because the economic harm alleged by each class member was the result of the same corporate-wide policies and if the policies were held unlawful then a question central to the validity of each class member’s claim would be resolved in one stroke.” DL v. District of Columbia, 713 F.3d 120,_, 2013 U.S. App. LEXIS 7375, 22 (D.C. Cir. 2013). This recognition aligns with the Wal-Mart majority’s interest in certifying classes that will drive the resolution of litigation and it supports affirming the certification of Jacobsen’s class to determine the certified declaratory and injunctive relief. See Ferguson, ¶ 28 (finding a common fact issue existed concerning whether Safeco programmatically breached insured’s made whole rights); McDonald, 261 Mont. at 401 (concluding that commonality was satisfied, despite class members living in different areas with different water sources, because the common theory was that the defendant breached a duty owed to all class members); M. R. Civ. P. 23(c)(4) (‘When appropriate, an action may be brought or maintained as a class action with respect to particular issues.”); see also Williams v. Mohawk Indus., 568 F.3d 1350, 1360 (11th Cir. 2009) (“‘Since in theory there should be no hard requirement that (b)(2) be mutually exclusive, and since subpart (c)(4)(A) allows an action to be maintained ‘with respect to particular issues,’ the fact that damages are sought as well as an injunction or declaratory relief should not be fatal to a request for a (b)(2) suit, as long as the resulting hybrid case can be fairly and effectively managed.’ ”).
¶44 Indeed, federal courts applying Wal-Mart’s commonality analysis have focused on the presence of just this sort of common contention alleging that a defendant’s programmatic conduct violates the law. See DL, 713 F.3d at 127 (vacating class certification after Wal-Mart because “the district court identified no single or uniform policy or practices that bridges all [the putative class members’] claims.”); Wang v. Chinese Daily News, 709 F.3d 829, 834 (9th Cir. 2013) (vacating and remanding class certification following Wal-Mart and requiring that *414 the plaintiff show “significant proof that [the defendant] operated under a general policy of [violating California labor laws]” to satisfy commonality); Forte v. Wal-Mart Stores, Inc., 2012 Dist. LEXIS 97435 5-6 (S.D. Tex.) (noting that if the lease agreement provision plaintiffs were contesting was a per se violation of the Texas Optometry Act, “commonality would be met.”); Khaliel v. Norton Health Care, Inc., 287 F.R.D. 511, 517 (W.D. Ky. 2012) (affirming class certification post-WalMart where fit is the appropriateness of that [employment benefit calculation] methodology that will be determined when the court reaches the merits of the case, and such a question is indeed ‘capable of classwide resolution’... and does not turn on the validity of countless individual discretionary decisions.”); Kingsbury v. U.S. Greenfiber, LLC, 2012 U.S. Dist. LEXIS 94854, 18-19 (C.D. Ca.) (concluding WalMart did not alter the Court’s decision to certify a class based on common questions including whether a standard purchase agreement was deceptive under California’s Unfair Competition Law); Creely v. HCR ManorCare, Inc., 2011 U.S. Dist. LEXIS 77170, 4-5 (N.D. Ohio) (reconsidering class certification in light of Wal-Mart and concluding the concerns raised in Wal-Mart “simply do not exist here” because “the crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs’ statutory rights.”).
¶45 Allstate also asserts that the common questions identified by the District Court do not demonstrate that the proposed class members have all “suffered the same injury.” See Wal-Mart, 131 S. Ct. at 2551. Allstate specifically argues that the first proposed common question-whether the CCPR as applied to unrepresented claimants violates the UTPA-fis precisely the type of generalized question that Wal-Mart identified as insufficient.” However, as discussed above, the determination of whether Allstate’s common application of the CCPR to the proposed class violated the UTPA is the sort of “common scheme of deceptive conduct” that necessarily presents common questions of law and/or fact. See Ferguson, ¶ 28; McReynolds, 672 F.3d at 491.
¶46 Allstate further contends that this question cannot be answered as a class question because an independent cause of action for a UTPA violation or common law bad faith requires a showing of actual damages. Because Allstate argues a showing of actual damages would require case-specific, individual inquiries, it asserts that the first common question cannot be answered for the class as ¿ whole. However, as discussed above, individualized damage inquiries generally do not preclude class certification. See Mattson III, ¶ 38 (citing McDonald, 261 Mont. at 403-04). Damages claims may be determined in later individual trials after a class trial has determined *415 the availability of the requested injunctive and declaratory relief. McReynolds, 672 F.3d at 491.
¶47 Allstate argues the second proposed common question is deficient because whether Allstate’s profit increased while total compensation paid to the class decreased does not provide a common answer demonstrating a violation of §§33-18-201(1) or (6), MCA. Jacobsen responds that the second common question would answer whether the CCPR caused indivisible ‘legal injury” to the class as a whole ‘through the use of a dishonest system, whether or not the monetary value of each settlement ultimately was unfair.” We agree that the second certified class claim question is deficient, but only insofar as it conflicts with our conclusion that the Court’s certification of a class-wide punitive damages award was improper. As framed by the District Court, the second class claim asks the class jury to determine whether Allstate’s systematic use of the CCPR caused indivisible harm to the class as a whole by operation of a zero-sum economic theory and an inversely proportional relationship between Allstate profits and compensation paid to unrepresented claimants. The Court formulated this claim so as to justify the entry of a class-wide punitive damages award. We believe that the second certified class claim must be revised in light of our conclusion that punitive damages must be determined on an individualized basis, to be awarded only if the claimant can demonstrate compensatory loss. We consequently modify the second certified claim as follows:
(B) Allstate’s common, systematic use of this pattern and practice in Montana resulted in damages to the members of the class by operation of its zero-sum economic theory and the resulting inversely proportional relationship between Allstate profit increases and corresponding decreases in the total amount of compensation paid to the class of unrepresented claimants as a whole; and [...]
See Section 3-2-204, MCA (entitling us to “affirm, reverse, or modify any judgment or order appealed from[.]”). The District Court considered the second common contention as proposing whether the CCPR’s alleged pursuit of profits at the expense of unrepresented claimants harmed the class by potentially violating the unrepresented claimants’ rights to good faith adjusting of their claims under the UTPA. Answering this question, as revised, would presumably help determine whether the CCPR was an intentional, programmatic effort to produce unfair settlements in violation of the UTPA. While an increase in profits concurrent with a decrease in total payments to the class as a whole may not prove a violation of the UTPA by itself, the *416 District Court did determine that significant proof existed that Allstate developed the CCPR program “with the knowledge and intent” that its implementation would reduce the net sum of unrepresented settlements. This revised inquiry would help advance the determination of the legality of the CCPR while avoiding our concerns with a class-wide award of punitive damages, as discussed below.
¶48 The third common contention asks whether Allstate consciously disregarded a high probability that the net effect of the CCPR would result in decreased settlements to the 'class as whole. Thus, an affirmative answer to the second question, determining that the CCPR was an intentional effort to engage in unfair settlement practices to increase profits, would likely advance the resolution of the third question and could support a finding of actual malice pursuant to §27-1-221(2), MCA. However, Allstate claims that the third common question is deficient because Jacobsen does not assert his claim was underpaid. Jacobsen responds that the harm at issue is insufficient class-wide settlement payouts due to the CCPR’s zero-sum economic focus. Because Jacobsen argues that Allstate implemented the CCPR with the intention of implementing a zero-sum economic game to systematically produce unfair settlements and increase profits, this contention would resolve an issue central to each class member’s claim: whether Allstate acted maliciously by applying the CCPR with the intent of lowering payouts to increase profits.
¶49 It is important to note that district courts have “broad power and discretion vested in them by” Rule 23 “with respect to matters involving the certification and management of potentially cumbersome or frivolous class actions.” Reiter v. Sonotone Corp., 442 U.S. 330, 345, 99 S. Ct. 2326 (1979); accord Sieglock, ¶ 8 (‘Trial courts have the broadest discretion when deciding whether to certify a class.”). Here, class-wide resolution of the proposed common contentions “will drive the resolution of the litigation.” Chipman, ¶ 52. Such potentially illuminating questions are the focus of Rule 23(a)(2) and, as discussed above, resolving whether the CCPR violates the UTPA would set the stage for later individual trials. Moreover, as we require, the District Court examined the evidence behind the pleadings to determine that the proposed class actually satisfied the commonality prerequisite. We therefore conclude that the District Court did not abuse its discretion by determining that Jacobsen’s common contentions, as construed by this Court, satisfy the commonality requirements of Rule 23(a)(2).
¶50 Again, both Jacobsen and Allstate have claimed that Wal-Mart presents a heightened commonality standard when compared with our previous conception of the rule, and both applied Wal-Mart to the case *417 on appeal. Because of this, and because we affirm the District Court’s class certification (also based on Wal-Mart), we need not address whether Wal-Mart presents a different standard and if we intend to adopt it. Mattson III, ¶ 37. Instead, as we did in Chipman and Mattson III, we simply conclude that Jacobsen satisfies the Wal-Mart commonality standard because the certified class claims depend upon a common contention concerning a programmatic course of conduct that is “of such a nature that it is capable of classwide resolution,” i.e., that “determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.” Wal-Mart, 131 S. Ct. at 2551.
iii. Typicality-Rule 23(a)(3)
¶51 Regarding typicality, we have previously explained that this requirement ‘is designed to ensure that the interests of the named representative are aligned with the interests of the class members, the rationale being that a named plaintiff who vigorously pursues his or her own interests will necessarily advance the interests of the class.” Mattson III, ¶ 21 (citing Chipman, ¶ 53). Thus, “‘[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.’ ”Arlington Video Prods. v. Fifth Third Bancorp, 2013 U.S. App. LEXIS 3355, 42 (6th Cir. 2013). The commonality and typicality requirements ‘tends to merge,” Falcon, 457 U.S. 147, at 158 n. 13, and typicality generally “prevents plaintiffs from bringing a class action against defendants with whom they have not had any dealings.” Diaz, ¶ 35. Typicality is not a demanding requirement, and it “is met if the named plaintiffs claim ‘stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based upon the same legal or remedial theory.’ ” Diaz, ¶ 35 (quoting McDonald, 261 Mont. at 402). The underlying event, practice, or course of conduct ‘heed not be identical.” Diaz, ¶ 35. In addition, because Wal-Mart’s discussion of Rule 23(a) hinged on an analysis of commonality, the opinion did not consider the requirements of typicality and did not purport to establish a heightened level of review.
¶52 The District Court found that the nature of Jacobsen’s claim was typical of those of the proposed class because “significant proof [exists] that Allstate subjected the class as a whole, including but not limited to Plaintiff, to the same systematic violation of §33-18-201(1) and (6), MCA, through the pattern and practice of the Casualty CCPR’s unrepresented segment adjusting practices.” Specifically, the Court found that: Jacobsen and each proposed class member are members of the above-defined class; Jacobsen and each class member were at a *418 minimum subjected to the same allegedly unlawful conduct generally; and the allegedly unlawful conduct caused harm to the class as a whole by operation of the CCPR and its alleged zero-sum economic theory. Thus, as required by our opinion in Mattson II, the District Court probed behind the pleadings to actually determine whether Jacobsen met the typicality prerequisite.
¶53 On appeal, Allstate argues that the District Court erred because “Jacobsen is not even a member of the class.” Allstate supports this contention by claiming that Jacobsen lacks individual standing because his initial release, obtained after his claim was adjusted to an unrepresented settlement pursuant to the CCPR, was rescinded, citing Hop v. Safeco Ins. Co., 2011 MT 215, 361 Mont. 510, 261 P.3d 981. Allstate further attempts to distinguish Jacobsen’s claim from those of the class members by arguing that he does not contend his property damage claim was improperly handled and that he only seeks damages due to alleged emotional distress. Jacobsen in turn claims that the application of the CCPR is a per se violation of the UTPA, that the application of the CCPR to the class as a whole resulted in systemic economic injury, and that both he and the class suffered emotional distress from the application of the CCPR to their claims. Jacobsen essentially asserts that typicality isn’t destroyed if class members display some uniqueness in the character of their individual injuries.
¶54 First, our opinion in Hop can be distinguished. There, we declined to find typicality based on the named representative’s lack of individual standing for failing to meet the procedural requirements of §33-18-242(6), MCA. Hop, ¶ 20. The named representative did not lack individual standing because of any factual differences in the substantive details of his claim, but for bringing a claim under §33-18-201, MCA, despite the absence of any judgment in, or settlement of, his underlying claim as required by §33-18-242(6), MCA. This holding is therefore inapplicable to Allstate’s argument that Jacobsen’s claim is not typical because of the specific facts of the application of the CCPR to his unrepresented claim.
¶55 Second, Allstate’s arguments miss the aim of the typicality requirement by raising issues with the specific facts of Jacobsen’s claim and the specific relief he seeks. See Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (1992) (‘Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.”). Jacobsen is a member of the class as defined by the District Court. He was an unrepresented third-party claimant bringing claims for property damage and bodily injury following a motor vehicle accident with an Allstate insured. *419 Allstate applied the CCPR to Jacobsen while he was unrepresented, and, at base, Jacobsen’s class claim alleges that Allstate systematically applies the CCPR to violate the rights of unrepresented claimants under the UTPA. Jacobsen’s claim stems from the same course of conduct, the application of the CCPR to unrepresented claimants, as the proposed class members’ claims and both Jacobsen’s and the class members’ claims are based on the same legal theory, that this application of the CCPR violates the UTPA. The injuries that allegedly resulted among class members, whether economic or emotional, are not sufficiently dissimilar to render Jacobsen’s claim atypical of those of the class regarding this core allegation.
¶56 Indeed, we have previously determined that the common application of an insurance practice to a proposed class constitutes an event, practice, or course of conduct sufficient to satisfy the typicality requirement. See Diaz, ¶ 36; Ferguson, ¶¶ 26-28 (finding the related commonality requirement satisfied by an allegedly programmatic breach of a duty). In Chipman, we considered claims that the named plaintiffs’ claims were atypical from those of the class in the context of a suit over the discontinuation of a sick leave buy-back program. Chipman, ¶ 54. The defendant employers argued that the named plaintiffs’ claims were atypical because they worked for the employers for a longer period and may or may not have attended a meeting with management. Chipman, ¶ 54. The plaintiff employees argued that the class members’ disputes were typical because they were triggered by the same underlying cancellation of the buy-back program. Chipman, ¶ 54. We determined that because the claims of the named plaintiffs and class members all arose from the same event, the plaintiffs were able to establish “the necessary nexus between the injuries alleged by named Plaintiffs and class members.” Chipman, ¶ 56. We based this decision on an analysis of Cates v. Cooper Tire & Rubber Co., 253 F.R.D. 422 (N.D. Ohio 2008). There, the named plaintiffs sought class certification in a suit against their employer over the imposition of a cap on post-retirement health benefits. Cates, 253 F.R.D. at 424. The district court determined that typicality was satisfied despite the fact that the benefit plans of the named plaintiffs varied from those of the class members because all of the claims arose from the same event or practice and the class members relied on the same legal theory. Cates, 253 F.R.D. at 429. Jacobsen’s and the class’s claims arise from the CCPR and all are proceeding under the legal theory that the CCPR was implemented to lower claims payments to the class by violating the rights afforded claimants under the UTPA.
¶57 In addition, as we discuss below, our reformation of the *420 requested class relief will cause the specifics of Jacobsen’s injuries to be aired in a later, individual suit for damages if the court awards the requested class injunctive and declaratory relief. Jacobsen’s injunctive and declaratory claims arise from the same course of conduct as those of the putative class members, the application of the CCPR to his unrepresented claim for bodily injury and property damage following a motor vehicle incident. A class trial may efficiently, and appropriately, determine the legality of this program as applied to the class as a whole. See McReynolds, 672 F.3d at 490-91. Allstate’s concerns over Jacobsen’s typicality, centered on the details of his injury and the availability of certain defenses, will be obviated if the specifics of Jacobsen’s injuries will not be addressed in a class trial that considers only the proposed injunctive and declaratory relief. Thus, despite Allstate’s contentions, the specifics of Jacobsen’s alleged injuries do not render him atypical of the class because his claim “stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based upon the same legal or remedial theory,” McDonald, 261 Mont. at 402 (quoting Jordan v. County of Los Angeles, 669 F.2d 1311, 1321 (9th Cir. 1982) (emphasis in original). This satisfies the typicality requirement and we affirm the District Court’s decision.
iv. Adequacy-Rule 23(a)(4)
¶58 The fourth prerequisite of Rule 23(a) allows certification only where the representative parties will fairly and adequately protect the interests of the class. M. R. Civ. P. 23(a)(4). “ ‘This requires that the named representative’s attorney be qualified, experienced, and generally capable to conduct the litigation, and that the named representative’s interests not be antagonistic to the interests of the class.’ ” McDonald, 261 Mont. at 403, 862 P.2d at 1156 (quoting Jordan, 669 F.2d at 1323). Adequacy is therefore closely related to commonality and typicality. Regarding potential antagonistic interests, the District Court determined that because Jacobsen’s asserted class claims satisfied the commonality and typicality requirements, Allstate had failed to show a compelling reason why Jacobsen’s individual interests would conflict with the common interests of the class. The court also took notice that Jacobsen’s class counsel are competent and experienced in complex class action litigation.
¶59 Allstate argues that Jacobsen’s claims will be subject to unique defenses that are likely to become the focus of any trial. However, “perfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable.” Matamoros v. Starbucks Corp, 699 F.3d 129, 138 (1st Cir. *421 2012). When we apply this recognition to the adequacy requirement of Rule 23(a)(4), it is clear that ‘“[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.’ ’’Matamoros, 699 F.3d at 138 (quoting 1 William B. Rubenstein, Newberg on Class Actions §3:58 (5th ed. 2012)). The potential intra-class conflicts that Allstate cites-which include Jacobsen’s desire for an early settlement, that he may have initially decided to not hire an attorney, and the cause of his emotional distress-are not “so substantial as to overbalance the common interests of the class members as a whole.” Matamoros, 699 F.3d at 138. As a third party claimant contesting the legality of the CCPR, Jacobsen has incentive to vigorously pursue the requested injunctive and declaratory relief. In view of this, the limited scope of the class trial on remand, and the District Court’s considerable discretion in class certification decisions, we conclude that the District Court did not abuse its discretion by concluding that Jacobsen’s interests are not antagonistic to those of the proposed class.
¶60 2. Whether the District Court abused its discretion by certifying a M. R. Civ. P. 23(b)(2) class action lawsuit?
¶61 Once the Rule 23(a) prerequisites are satisfied, the analysis shifts to Rule 23(b). Mattson III, ¶ 18. To be certified, a class must fit within one of the three types described in Rule 23(b). Wal-Mart, 131 S. Ct. at 2548-49. At the District Court, Jacobsen argued that his proposed class qualified under Rule 23(b)(2), or alternatively, as a ‘hybrid-type class” combining elements of Rule 23(b)(2) and Rule 23(b)(3). Rule 23(b)(2) allows a class action to be maintained if, having met the requirements of Rule 23(a), “the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]” M. R. Civ. P. 23(b)(2). As the Wal-Mart decision noted, “[t]he key to the [Rule 23](b)(2) class is, the indivisible nature of the injunctive or declaratory remedy warranted-the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them,” Wal-Mart, 131 S. Ct. at 2557 (internal citation omitted).
¶62 Rule 23(b)(3) allows a class action if the court finds that the common questions of law or fact predominate over individual questions. The District Court declined to address Jacobsen’s alternative claim for Rule 23(b)(3) relief because of the “cursory” briefing and ‘logical inconsistency” of a hybrid Rule 23(b)(2) and (b)(3) class. Jacobsen does not challenge this decision on appeal.
¶63 The District Court specifically found that “significant proof’ *422 existed that Allstate, the party opposing the class, had acted on grounds that generally applied to the class through its use of the CCPR program.[8] Following this determination, the Court examined whether Jacobsen sought appropriate forms of injunctive and declaratory relief and whether Jacobsen’s requested monetary relief was permissible under Rule 23(b)(2). After denying Jacobsen’s claims for equitable disgorgement and a vague prohibitive injunction,[9] the Court certified the following class action remedies under Rule 23(b)(2):
(A) declaratory judgment adjudicating the constituent assertions of the certified class claim [quoted at ¶ 16];
(B) mandatory injunction requiring Allstate to:
(1) give all class members court-approved notice of the right and opportunity to obtain re-opening and re-adjustment of their individual claims by timely returning a proof of claim form;
(2) re-open and re-adjust each individual claim upon receipt of a timely filed proof of claim;
(C) class-wide punitive damages pursuant to §27-1-220 and 27-1-221(2), MCA (actual malice), predicated on the above-referenced class-wide conduct; and
(D) common fund recovery of class action attorney fees and costs upon a class-wide punitive damages award[.][10]
Allstate generally contests the appropriateness of the certified class remedies as applied to both the class and Allstate, and further asserts various violations of both its, and the class members’, right to due process.
*423 ¶64 As we explain below, we affirm the Court’s certification of a Rule 23(b)(2) class asserting the above class declaratory (%A)”) and injunctive (“(B)”) relief, but we reverse the certification of a potential class-wide punitive damages award (“(C)”). We accordingly remand with direction to determine the availability of the above declaratory and injunctive relief in a class trial. Further, instead of considering class-wide punitive damages, the class trial will determine whether Allstate’s implementation of the CCPR involved either actual fraud or actual malice pursuant to §27-1-221, MCA. See §33-18-242(4), MCA; Lorang v. Fortis Ins. Co., 2008 MT 252, ¶ 91, 345 Mont. 12, 192 P.3d 186. Thus, the class trial will initially determine if the CCPR violates the UPTA according to the certified declaratory relief. If so, the Court will issue a mandatory injunction requiring Allstate to give all class members notice of the right to re-open and re-adjust their individual claims. Last, the class trial will determine if Allstate engaged in actual fraud or actual malice in implementing the CCPR. If so, the trier of fact in the later individual cases may determine the amount of individual punitive damages to be awarded if individual actual damages are also established. We will discuss the certified class remedies in turn.
A. The Declaratory and Injunctive Relief
i. Class Cohesiveness
¶65 Allstate first argues that a Rule 23(b)(2) class is inappropriate because the class lacks cohesiveness. This is essentially a restatement of Allstate’s arguments against commonality and typicality. However, because a Rule 23(b)(2) class action is considered "mandatory,” see Wal-Mart, 131 S. Ct. at 2558,[11] a class that lacks homogeneity could unjustly bind absent class members to a negative decision. See Barnes v. Am. Tobacco Co., 161 F.3d 127, 143 (3d Cir. 1998). Because the relief sought must be able to affect the entire class at once, we will examine the cohesiveness of the class in the context of a mandatory Rule 23(b)(2) class.
¶66 Allstate claims the proposed class is inappropriate as a Rule 23(b)(2) class because it “would necessarily include many individuals who suffered no injury and thus could have no UTPA claim ....” Allstate claims both that these dissimilar class members would be unjustly bound by the action and that the lack of homogeneity would *424 involve the adjudication of significant individual issues. However, these arguments are premised on a misunderstanding of the nature of Jacobsen’s asserted class claims and are precluded by the scope of the class trial on remand. The individual context of any one settlement is not relevant to the adjudication of the certified declaratory and injunctive relief and our reformation of the punitive damages portion of the certified relief removes the consideration of individual circumstances in the class trial. Thus, Allstate’s claim that not all class members have suffered actual harm or an unfair adjustment misses the point. The certified class claims on remand are not intended to resolve individual cases of unfair settlement or payment. Instead, they are aimed at adjudicating the initial legality of the CCPR as applied to the class. The later individual trials would allow Allstate to present evidence that individual class members suffered no injury. But, the initial legality of the CCPR would not need to be re-litigated in each subsequent individual trial. See DL, 2013 U.S. App. at 22; McReynolds, 672 F.3d at 491; Mejdrech, 319 F.3d at 911.
¶67 As the District Court noted, our decision in Ferguson supports certifying Jacobsen’s requested declaratory and injunctive relief as part of a Rule 23(b)(2) class. There, as part of a Rule 23(b)(2) class, the plaintiff sought a declaration that the insurer, Safeco, had breached its adjustment duties through a “programmatic assertion of subrogation without first investigating and determining whether insureds had received their ‘made-whole’ rights.”Ferguson, ¶ 33. Facing a similar claim that the requested declaratory relief would require the adjudication of individual “made-whole” entitlements, we determined that the plaintiffs claim did not raise issues with Safeco’s application of the ‘blade-whole” rule to any one insured. Ferguson, ¶¶ 34, 39. Instead, we concluded that the plaintiffs claim contested “the procedures of a program of subrogation which systematically deprives all class members of any consideration of their ‘made-whole’ rights.” Ferguson, ¶ 34. Thus, like Jacobsen, the plaintiff in Ferguson sought a declaration requiring Safeco to follow a statutory duty prior to any consideration of the actual harm the violation of this standard caused to any individual class member. These “class claims do not seek a determination of entitlements for each class member and the payment of damages; rather [both] class claims seek a declaratory ruling that will be enforced to compel [the insurer] to follow the legal standard....” Ferguson, ¶ 34; see also Diaz, ¶ 47.
¶68 Here, as in Ferguson, the plaintiff seeks “an order compelling [the insurer] to properly perform its statutory adjustment duties.” Ferguson, ¶ 36. Because Jacobsen presents a common question alleging *425 a common injury, an answer will determine whether the CCPR will be “enjoined or declared unlawful only as to all of the class members or as to none of them.” See Wal-Mart, 131 S. Ct. at 2557. The potential later individualized determinations of underpayment are not necessary to answer Jacobsen’s class claims and do not render the class overbroad.
ii. Class Injunctive and Declaratory Relief is ‘Final”
¶69 Allstate contends that Rule 23(b)(2) requires ‘final” relief, and contends the certified relief is not final because ‘It only serves as a basis to present damage claims later.” Allstate largely cites federal precedent as support for this proposition. However, we have never construed M. R. Civ. P. 23(b)(2)’s use of‘final”to impose a substantive obligation on plaintiffs, and it is not clear that Allstate’s citations to authority recommend that we do so. See Richards v. Delta Air Lines, Inc., 453 F.3d 525, 530 (D.C. Cir. 2006) (‘Subsection (b)(2) was not intended to ‘extend to cases in which the appropriate final relief relates exclusively or predominantly to monetary damages.’ ”). Moreover, Allstate’s preferred citations are distinguishable from the present case. See Kartman v. State Farm Mut. Auto. Ins. Co., 634 F.3d 883 (7th Cir. 2011) (contesting the failure to implement a uniform program); Jamie S. v. Milwaukee Public Schools, 668 F.3d 481 (7th Cir. 2012) (finding proof of an illegal policy was “entirely absent here.”). We have not recognized a substantive ‘finality” requirement in Rule 23(b)(2) and we address Allstate’s complaints concerning monetary relief below.
iii. Injunctive and Declaratory Relief is not Amorphous
¶70 As noted, Jacobsen seeks declaratory relief declaring the application of the CCPR to the class to be a violation of the UTPA and a mandatory injunction requiring Allstate to re-open and re-adjust claims. Allstate complains that this relief “is so amorphous and vague that it cannot support class certification,” citing Shook v. Bd. of County Comm’rs, 543 F.3d 597, 605 (10th Cir. 2008) and Kartman.
¶71 Allstate specifically argues that the requested declaratory relief would provide an inappropriately abstract or advisory opinion that failed to provide further direction on the process to be used if claims are to be re-adjusted. However, our rule against issuing advisory opinions is based in the concept of justiciability. Plan Helena, Inc. v. Helena Reg’l Airport Auth. Bd., 2010 MT 26, ¶¶ 8-9, 355 Mont. 142, 226 P.3d 567. The various doctrines of justiciability seek to ensure that courts provide specific relief in concrete, actual controversies instead of opinions advising what the law or rule would be based upon a hypothetical set of facts or abstract proposition. Plan Helena, Inc., ¶ 9. This prohibition does not mean that the Court’s potential *426 determination that the CCPR violates the law also needs to be accompanied by a judicial proposal for a legal claims adjusting program. Our statutory requirement that an order granting an injunction be specific in its terms, § 27-19-105(2), MCA, does not require this level of specificity either. See Guthrie v. Hardy, 2001 MT 122, ¶¶ 61-62, 305 Mont. 367, 28 P.3d 467 (faulting an injunction which failed to indicate which named party carried the obligation of maintaining a road). Insurance adjusting is squarely within Allstate’s area of expertise, not the judicial branch’s, and where we have previously faulted injunctions for a lack of specificity, we have not required the level of detail Allstate now requests.
¶72 Allstate’s citations to authority do not support enlisting the judiciary to draft claims adjusting policies either. For example, in Shook, plaintiffs sought to certify a class containing all present and future mentally ill inmates in a Colorado jail. Shook, 543 F.3d at 600. The plaintiffs sought a Rule 23(b)(2) class with declaratory and injunctive relief addressing jail conditions. However, the plaintiffs suffered from a wide variety of mental illnesses and were subjected to a correspondingly wide range of treatments by the jail staff. Shook, 543 F.3d at 601. The plaintiffs sought a broad injunction “establishing standards across a wide range of areas affecting mentally ill inmates,” touching upon staffing, training, inmate housing, safety, psychiatric care, and the proper use of force. Shook, 543 F.3d at 602. The district court denied Rule 23(b)(2) certification because plaintiffs could not show that the defendants acted on grounds generally applicable to the whole class and because the variety within the class precluded class-wide injunctive relief. Shook, 543 F.3d at 603. The Court of Appeals affirmed the decision, noting that “the relief plaintiffs seek would require the district court to craft an injunction that distinguishes-based on individual characteristics and circumstances-beiiceen how prison officials may treat class members[.]” Shook, 543 F.3d at 605 (emphasis in original). Moreover, an injunction that took the opposite tack and merely required “adequate” services would fail to describe just what, in light of the variety of the inmates’ needs, must be done. Shook, 543 F.3d at 606. Shook therefore does not stand for the proposition that Rule 23(b)(2) requires a certain specificity of injunctive relief, but for the general recognition that Rule 23(b)(2) classes must be sufficiently cohesive so that the injunctive relief applies to the class as a whole.
¶73 In Kartman, plaintiffs brought a class claim alleging, in part, that State Farm’s failure to use a uniform, objective criteria while assessing their hail-damaged roofs amounted to breach of contract, bad faith, *427 and unjust enrichment. Kartman, 634 F.3d at 887. As relief, plaintiffs requested compensatory and punitive damages and an injunction requiring State Farm to reinspect all class members’ roofs pursuant to a uniform and objective standard. The district court judge certified a Rule 23(b)(2) class to adjudicate the request for an injunction and to assess State Farm’s liability. Kartman, 634 F.3d at 888. The appellate court reversed, finding that plaintiffs’ only cognizable injury was for underpayment of their claims and that the requested injunctive relief was not the proper remedy. Kartman, 634 F.3d at 889-90. This finding was largely based on the court’s conclusion that State Farm had no duty to use an objective, uniform standard to determine hail-damage. Kartman, 634 F.3d at 890. Thus, the plaintiffs’ failing was that the court determined State Farm had no duty to use a particular method to evaluate hail-damage claims, let alone a duty to use the method the plaintiffs sought to impose with an injunction. Kartman, 634 F.3d at 890. This situation is distinct from the present case, where Jacobsen seeks a declaration that Allstate’s CCPR violates the UTPA and an injunction requiring notice to the class of the right to reopen their claims. Jacobsen, unlike the plaintiffs in Kartman, is not contesting the lack of a program or seeking to outline the contours of a legal program to be imposed on Allstate.
¶74 Unlike Shook and Kartman, the certified class at issue has been subjected to a common practice and has allegedly suffered a common injury to statutorily conferred rights. This common contention, as discussed, is amenable to class-wide relief. This does not mean, however, that the court must go beyond an injunction addressing tortious conduct to affirmatively dictate proper adjusting practices. See Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez), 695 F.3d 360, 368-69 (5th Cir. 2012) (holding that injunctions are problematic when they order a defendant to obey the law and do not indicate what law the defendant needs to obey).
B. Punitive Damages in a Rule 23(b)(2) Claim
¶75 The District Court certified the availability of class-wide punitive damages pursuant to §27-1-220 and §27-1-221(2), MCA. The District Court determined that monetary relief is available in a Rule 23(b)(2) class under Wal-Mart if it is incidental to the declaratory and injunctive relief, affords indivisible, non-individualized relief in a single stroke, and comports with due process by not prejudicing the rights of the class members and defendant to contest specific cases. The Court also noted that punitive damages are generally not available without a predicate award of compensatory damages, but reasoned that an award of punitive damages based on actual malice *428 does not require an award of compensatory damages if the evidence shows that the predicate tort caused actual harm or damage. The Court then determined that Jacobsen’s claim was capable of showing that Allstate’s alleged zero-sum economic theory visited a form of indivisible, actual economic harm upon the entire class, which it reasoned “would constitute a sufficient predicate for a class-wide punitive damages award in this case.” The Court further concluded that a class-wide punitive damages award did not implicate the due process concerns addressed in Wal-Mart because it was not an individualized monetary remedy and did not litigate any claim-specific issues.
¶76 Allstate initially contests the basic appropriateness of monetary damages under Rule 23(b)(2), claiming that “one possible reading” of Rule 23(b)(2) is that it does not authorize certification of monetary claims at all. The majority opinion in Wal-Mart did not go so far as to foreclose the availability of monetary relief in Rule 23(b)(2) classes, however, and it left open the possibility that incidental monetary claims could be certified under Rule 23(b)(2). Wal-Mart, 131 S. Ct. at 2557. However, we need not decide the matter in this case, because we reverse the District Court’s certification of a class-wide punitive damages award based on our concerns over the award’s potential effect on the due process rights of Allstate.
i. The Class-Wide Punitive Damages and Due Process
¶77 Allstate also claims that the District Court’s certification of class-wide punitive damages violates Allstate’s right to due process because Allstate would be precluded from raising case-specific defenses to an individual class member’s entitlement to punitive damages (e.g. that individual class member’s claims were handled appropriately or paid fairly). Conversely, Allstate argues that the potential class trial would ‘inappropriately devolve into a series of mini-trials ‘if the Court were to allow Allstate to present defenses to class member’s entitlement to punitive damages. Jacobsen counters that our decision in Gonzales established that punitive damages class claims can be maintained for systematic wrongdoing without individualized proof of harm. Jacobsen also asserts that Allstate’s proffered federal precedent does not apply in the class action context.
¶78 Given the nature of the requested relief as part of a Rule 23(b)(2) class, we agree that Allstate should be able to establish defenses to individual claims to ensure that punitive damages are not awarded to claimants that were not actually damaged by the adjustment of their claims under the CCPR. See Philip Morris USA v. Williams, 549 U.S. 346, 353, 127 S. Ct. 1057 (2007) (TT]he Due Process *429 Clause prohibits a State from punishing an individual without first providing that individual with ‘an opportunity to present every available defense.’ ”); Seltzer v. Morton, 2007 MT 62, ¶ 145, 336 Mont. 225, 154 P.3d 561. It is true that our Gonzales opinion considered the constitutionality of a class-wide punitive damages award. However, Gonzales did not consider a class-wide punitive damages award in the context of a Rule 23(b)(2) class and we did not consider the defendant’s right to present a defense to each class member’s entitlement to a punitive damages award. Gonzales, ¶ 15. Gonzales instead approved class-wide punitive damages in a combination Rule 23(b)(1) and (3) class suit where the district court certified a Rule 23(b)(3) compensatory damages class. Gonzales, ¶¶ 17-19. Thus, the Gonzales class members’ entitlement to compensatory damages would be established during the class trial and would support an award of punitive damages. Here, adjudicating the requested injunctive and declaratory relief would not involve a similar determination of compensatory damages. Potentially granting class-wide punitive damages before determining whether individual class members suffered actual damages, as Jacobsen suggests, raises serious concerns about fairness. See Jacobsen I, ¶ 67; Stipe v. First Interstate Bank-Polson, 2008 MT 239, ¶ 23, 344 Mont. 435, 188 P.3d 1063. ‘Due process requires that there be an opportunity to present every available defense.” Lindsey v. Normet, 405 U.S. 56, 66, 92 S. Ct. 862 (1972). Permitting a class-wide recovery of punitive damages before sending notice to the class and determining the extent of the class members’ actual harm would allow the punitive award to be potentially based on non-injured parties. Allstate should be allowed to contest class members’ entitlement to punitive damages. Philip Morris USA, 549 U.S. at 353-54. We accordingly conclude that the District Court abused its discretion by certifying the requested class-wide punitive monetary relief.
ii. The Second Certified Class Claim
¶79 Again, our conclusion that the Court abused its discretion by certifying a class-wide punitive damages award requires us to revise the second certified class claim. Our reformation of the second claim is discussed in paragraph 47, supra.
¶80 3. Whether the District Court erred by holding that the Montana Rules of Evidence do not apply to class action proceedings?
¶81 Last, Allstate entered several objections before the District Court concerning the Court’s consideration of what Allstate argued was inadmissible evidence during the certification proceedings. In a footnote, the Court determined that the evidence Jacobsen presented *430 in the Rule 23 certification proceedings did not need to be fin a trial-admissible form,” and denied Allstate’s objections to “the ultimate trial-admissible evidentiary sufficiency of Plaintiff s preliminary Rule 23 factual showings in this case.”
¶82 On appeal, Allstate maintains that the District Court erroneously based its class certification order on evidence that “was clearly inadmissible under the Rules of Evidence.” Allstate argues this allegedly inadmissible evidence included opinions and statements in an expert report, an article written by the Consumer Federation of America, an affidavit by one of Jacobsen’s attorneys, a power point presentation referred to as the “Liddy slides,” an incentive compensation plan, and affidavits and testimony from a New Mexico case that considered the CCPR. Jacobsen counters that his case “was grounded on dozens of McKinsey documents”that Allstate produced on remand and that all other evidence was properly considered. However, because the Court did not make a ruling on the admissibility of any of the evidence in question, the specific admissibility of a particular piece of evidence is not presented to this Court on appeal. Rather, we must consider the Court’s contention that evidence need not be in a “trial admissible form” for the purposes of class certification proceedings. ¶83 Allstate specifically contends that the District Court’s determination that “a rigorous Rule 23 analysis” does not necessarily require a preliminary factual showing in “a trial-admissible form” was error in light of our decision in Mattson II and the Montana Rules of Evidence. In Mattson II, the District Court refrained from engaging in an analysis of the merits of the plaintiffs’ claims and stated it was required to take the plaintiffs’ allegations in support of the class action as true. Mattson II, ¶ 61. The District Court thereafter certified the class. On appeal, the defendant argued that the court erred in its Rule 23 analysis by taking the plaintiffs’ allegations as true and asserted that the court should have made its determination ‘based upon the evidence.” Mattson II, ¶ 62. We held that the court erred by determining it must take the plaintiffs’ allegations as true and noted a district court “certainly may look past the pleadings” when determining if Rule 23’s requirements have been met .Mattson II, ¶ 65. Quoting the Supreme Court’s decision in Falcon, we held “‘sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question’ ” to determine actual conformance with Rule 23(a). Mattson II, ¶ 65 (quoting Falcon, 457 U.S. at 160, 102 S. Ct. at 2372). Therefore, while this “probe behind the pleadings” may necessitate allowing discovery and hearing evidence, Mattson II also determined “there is no absolute requirement that a *431 hearing be held” if ‘the paper record before the court” is adequate. Mattson II, ¶ 66. The applicability of the Montana Rules of Evidence was not addressed by this Court and was not a basis of our decision. Thus, despite Allstate’s argument to the contrary, Mattson II does not stand for the proposition that courts must apply the Rules of Evidence in Rule 23 proceedings.
¶84 Allstate also argues that the Montana Rules of Evidence require their application to Rule 23 proceedings. In support, Allstate cites M. R. Evid. 101(a) and 104(a). Rule 101(a) states that “[tjhese rules govern all proceedings in all courts in the state of Montana with the exceptions stated in this rule.”Rule 101(c) lists the situations in which the rules do not apply, including preliminary questions of fact, grand juries, miscellaneous proceedings like those for extradition or the issuance of warrants for arrest, “summary” proceedings, and other miscellaneous proceedings like ex parte matters. Allstate contends that because the exceptions listed under Rule 101(c) do not include class certification proceedings, the rules must apply. Rule 104 governs Tpjreliminary questions of admissibility” and Rule 104(a) specifically covers Tqjuestions of admissibility generally.” While Rule 104(a) notes further situations where the rules of evidence do not apply, it is not relevant to this case.
¶85 In response, Jacobsen cites federal authority stating that courts in Rule 23 proceedings “may consider evidence that may not be admissible at trial.” Alonzo v. Maximus, Inc., 275 F.R.D. 513, 519 (C.D. Cal. 2011); see also Fisher v. Ciba Specialty Chemicals Corp, 238 F.R.D. 273, 279 n. 7 (S.D. Ala. 2006) (‘The Federal Rules of Evidence are not stringently applied at the class certification stage because of the preliminary nature of such proceedings.”). Indeed, federal courts do not generally require the application of the rules of evidence in class certification proceedings. See Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 603 n. 22 (9th Cir. 2010) (‘We are not convinced by the dissent’s argument that Daubert has exactly the same application at the class certification stage as it does to expert testimony relevant at trial.”) (reversed on other grounds by Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 795 (2011)); Ellis v. Costco Wholesale Corp, 240 F.R.D. 627, 635 (N.D. Cal. 2007) (“At this early stage, robust gatekeeping of expert evidence is not required; rather, the court should ask only if expert evidence is ‘useful in evaluating whether class certification requirements have been met.’ ”); Kelly v. Montgomery Lynch & Assocs., 2007 U.S. Dist. LEXIS 93656, 3-4 (N.D. Ohio 2007) (‘The Court declines to grant the Plaintiffs motion to strike, however, because the Federal Rules of Evidence do not strictly apply in evaluating a Rule 23 *432 motion for class certification.”); Bell v. Addus Healthcare, Inc., 2007 U.S. Dist. LEXIS 78950, 5-6 (W.D. Wash. 2007) (Thus, ‘Fed. R. Civ. Pro. 23 does not require admissible evidence in support of a motion for class certification and the Court will not create that standard.”).
¶86 Importantly, the federal cases that hold that the Federal Rules of Evidence do not necessarily apply to class certification proceedings do not base their decisions on an application of F. R. Evid. 1101, which, like M. R. Evid. 101(c), enumerates the exceptions to the general applicability of the rules of evidence.[12] Instead, these federal courts based their conclusions on the requirements of the identical F. R. Civ. P. 23, and, as noted, we consider such federal precedent to be instructive. Specifically, these courts have determined that Rule 23 does not require specific proceedings or trial admissible evidence because of the preliminary nature of class certification and trial courts’ broad discretion in certification decisions. See e.g., Rhodes v. E.I. Dupont De Nemours & Co., 2008 U.S. Dist. LEXIS 46159, 37 (S.D. W. Va. 2008) (Rule 23 “does not specifically provide for, require, or prohibit specific proceedings,” including those that apply the Federal Rules of Evidence). Indeed, “class certification is not a dispositive motion [like Fed. R. Civ. P. 56] that requires [a] Plaintiff to submit admissible evidence” in support of their arguments for certification, and federal courts have been reluctant to create that requirement. Bell, 2007 U.S. Dist. at 5-6.
¶87 Because of the preliminary, discretionary nature of class certification questions, every federal circuit but the Seventh[13] has declined to require that a district court must conclusively decide what evidence may be ultimately admissible at trial during the class certification stage. See Cox v. Zurn Pex, Inc., 644 F.3d 604, 611 (8th Cir. 2011). “A court’s rulings on class certification issues may evolve” *433 through the course of discovery. Cox, 644 F. 3d at 613. The ‘inherently tentative” nature of these decisions may make final evidentiary decisions unnecessary or inappropriate. Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 n.11, 98 S. Ct. 2454 (1978).
¶88 Importantly, the Wal-Mart decision did not dispose of the federal courts’ varying application of the Federal Rules of Evidence to class certification proceedings. The Wal-Mart Court considered the plaintiffs’ production of the testimony of Dr. William Bielby, a sociological expert, as the only proffered evidence ofWal-Mart’s alleged “general policy of [gender] discrimination.” Wal-Mart, 131 S. Ct. at 2553-54. The expert testified that Wal-Mart’s corporate culture was “vulnerable” to gender bias, but he could not specifically determine how regularly gender stereotypes played a meaningful role in employment decisions. Wal-Mart, 131 S. Ct. at 2553. The parties disputed whether this testimony met the standards for the admission of expert testimony under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993), and the District Court concluded Daubert didn’t apply to class certification proceedings. The Supreme Court’s opinion did not squarely address this contention, merely offering ‘We doubt” that ‘Daubert did not apply to expert testimony at the certification stage” in dicta while concluding “even if properly considered, Bielby’s testimony does nothing to advance respondent’s case.” Wal-Mart, 131 S. Ct. at 2554. Thus, the Wal-Mart majority failed to address the application of the Rules of Evidence to class action certification proceedings and the Court’s doubt was aimed only at the application of Daubert, a question not presented here.
¶89 Because the District Court’s inquiry into a motion for class certification is tentative, preliminary, and limited to a determination of only whether the litigation may be conducted on a class basis, “the court’s analysis is necessarily prospective and subject to change ... and there is bound to be some evidentiary uncertainty.” Cox, 644 F.3d at 613. A decision on a motion to certify a class is not a conclusive judgment on the merits of the case, and is “not accompanied by the traditional rules and procedure applicable to civil trials.” Eisen, 417 U.S. at 178, 94 S. Ct. at 2153. We therefore conclude that the District Court did not err by determining that evidence considered for the purposes of class certification need not be in trial admissible form.
CONCLUSION
¶90 We accordingly conclude that the District Court did not abuse its *434 discretion by certifying a Rule 23(b)(2) class action. We do, however, conclude that the certification of class-wide punitive damages was inappropriate in the context of a Rule 23(b)(2) class. According to our reformation of the requested relief, we remand for a class trial to determine whether the application of the CCPR to the class violated the UTPA, and, if so, to determine whether the District Court should enter an order requiring Allstate to provide notice to the class members of their right to re-open and re-adjust their claims. The trier of fact in the class trial will also make a determination as to whether Allstate’s implementation of the CCPR program involved actual fraud or actual malice, such as could justify the entry of punitive damages following a finding of actual damages in the ensuing individual cases. If the trier of fact determines that Allstate did not engage in either actual fraud or actual malice, the class members would be entitled to only the compensatory damages they can prove in the individual cases. Following the class trial, the Court shall determine whether there should be a common fund recovery of class-action attorney fees and costs.
¶91 We also conclude that the District Court did not err in its determination that class certification proceedings do not require evidence to be in “trial admissible” form.
¶92 We affirm the class certification, but modify the class claim and the certified class relief as herein set forth.
CHIEF JUSTICE McGRATH, JUSTICES COTTER and MORRIS concur.

 Jacobsen specifically alleged Allstate’s CCPR violated §33-18-201(1) & (6), MCA. Section 33-18-201(1), MCA, prohibits misrepresenting “pertinent facts or insurance policy provisions relating to coverages at issue.” Section 33-18-201(6) prohibits neglecting “to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.”

 A more thorough analysis of the District Court’s application of Rule 23(a) and (b) will be provided in the course of our legal discussion.

 We must note that the unusual size of the Wal-Mart class presented unique challenges that may make the case inapposite to the classes generally proposed in Montana. See Mattson III, ¶ 20 (at least 3,000 class members); Pallister v. Blue Cross & Blue Shield of Mont., Inc., 2012 MT 198, ¶ 7, 366 Mont. 175, 285 P.3d 562 (3,000 class members); Chipman, ¶ 46 (1,254 class members); Diaz, ¶ 31 (‘hundreds” of class members); Gonzales v. Mont. Power Co., 2010 MT 117, ¶ 6, 356 Mont. 351, 233 P.3d 328 (117 class members); Ferguson, ¶ 39 (“at least” 239 class members); McDonald, 261 Mont. at 400, 863 P.2d at 1155 (35,360 individual class members). The unique need in Wal-Mart to find some sort of common contention that would bind 1.5 million disparate individuals prompted a level of skepticism towards class certification that would likely never arise in Montana.

 It should be noted that the majority retained the permissive recognition that “for purposes of Rule 23(a)(2) ‘[e]ven a single [common] question’ will do .’’Wal-Mart, 131 S. Ct. at 2556.

 Moreover, the U.S. Supreme Court recently rejected the propriety of a merits inquiry at the class certification stage for a Rule 23(b)(3) class. The case, Amgen Inc., et al. v. Connecticut Retirement Plans and Trust Funds, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013), involved a securities fraud Rule 23(b)(3) class action. To prove securities *409 fraud and recover damages under § 10(b) of the Securities Exchange Act of 1934, a plaintiff must prove, inter alia, a material misrepresentation or omission by the defendant. Matrixx Initiatives, Inc. v. Siracusano, 568 U.S._,_, 131 S. Ct. 1309, 1317 (2011). Materiality is key in a § 10(b) class action suit because it is an essential predicate for the fraud-on-the-market theory that supports the presumption of “classwide reliance on those misrepresentations and omissions through the information-processing mechanism of the market price.” Amgen, 568 U.S. at__, 133 S. Ct. at 1194. Without this presumption, the plaintiffs could not prove that the class as a whole relied on the misrepresentation and present a common question suitable for Rule 23(b)(3). However, the Supreme Court held that proof that a defendant’s misrepresentations or omissions materially affected their stock price was not required at the Rule 23(b)(3) class certification stage. Amgen, 563 U.S. at_, 2013 LEXIS at 8. While Wal-Mart recognized that courts may intrude on merits issues, like materiality, to certify a class, the Amgen majority held that Rule 23(b)(3) ‘(requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.” Amgen, 568 U.S. at_, 2013 LEXIS at 8. As the Amgen decision emphasized, “the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the ‘methotdj best suited to adjudication of the controversy ‘fairly and efficiently.’ ’’ Amgen, 568 U.S. at_, 133 S. Ct. at 1191. Amgen accordingly supports our recognition that the focus of the class action device is the fair and efficient adjudication of common claims. Further, both Amgen and Wal-Mart dealt with questions concerning what sort of merits inquiry was appropriate. Ihe Amgen decision limited merits inquiries in the context of a Rule 23(b)(3) securities fraud claim, supporting the view that Wal-Mart’s more-skeptical level of Rule 23 analysis is not universally applicable.

 As discussed below, however, we believe it is necessary to revise the second certified class claim in light of our holding reversing the certification of a class-wide punitive damages award.

 Essentially, the plaintiffs contended that the teams were “little fraternities” that, intentionally or not, chose members largely from similar racial groups. McReynolds, 672 F.3d at 489. Brokers did not have to join teams, but being accepted by a successful team generally increased performance. Account distributions were made when a broker left Merrill Lynch to distribute his clients’ accounts and they were based on the past success of the brokers. Thus, if a broker wasn’t selected by a successful team, he may miss out on future account distributions, which would cause him to not be selected by the successful teams, and a vicious cycle could ensue. The plaintiffs argued that minority brokers at Merrill Lynch found it hard to join good teams “and as a result don’t generate as much revenue or attract and retain as many clients as white brokers do.” McReynolds, 672 F.3d at 490.

 The District Court based this finding on its construction of Jacobsen’s class claim, which is quoted at ¶ 16, supra. The Court essentially determined that Jacobsen claimed that the CCPR was a common practice in violation of §¡33-18-201(1) and (6), MCA, as applied to the class as a whole, that the CCPR caused economic harm to the class as a whole, and that Allstate consciously disregarded the high probability that the CCPR would result in insufficient net settlement payouts.

 The Court found that that a mandatory injunction compelling disgorgement of unlawful profits was not appropriate in addition to punitive damages and denied its availability as a Rule 23(b)(2) remedy. The Court also found that Jacobsen’s requested prohibitive injunction enjoining Allstate from engaging in unlawful conduct as found by the jury was fatally vague because it failed to articulate a specific prohibition that would provide relief to the class as a whole. Jacobsen does not appeal either decision.

 Allstate does not challenge the certification of common fund attorney fees on appeal.

 Rule 23(b)(2) classes are considered “mandatory” because the rule does not provide an opportunity for class members to opt out and does not require a district court to afford them notice. Wal-Mart, 131 S. Ct. at 2558.

 Like Montana Rule 101, Federal Rule 1101 specifically enumerates the situations in which the evidentiary rules do not apply. These situations are: preliminary questions offact regarding admissibility under Rule 104(a), grand-jury proceedings, and miscellaneous proceedings like extradition or rendition, issuing a warrant or summons, sentencing, granting or revoking probation, or bail. Thus, just like the Montana Rules, the Federal Rules neither address their applicability in class certification proceedings nor except the proceedings from their application.

 The Seventh Circuit only requires a conclusive ruling on any challenge to an expert’s qualifications or submissions when the expert’s report or testimony is ‘“critical to class certification.’ ”See e.g., Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 812 (7th Cir. 2012).