DA 12-0712

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 373

STEVE SANGWIN and AMY SANGWIN
WICKS, Individually and For the Benefit of
Their Minor Daughter, M.S.,

      Plaintiffs and Appellees,

  v.

STATE OF MONTANA and BLUE CROSS
AND BLUE SHIELD OF MONTANA, INC.,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDV-10-0566(C)
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Maxon R. Davis; Davis, Hatley, Haffeman & Tighe, P.C.;
Great Falls, Montana (for State of Montana)

            Michael F. McMahon; Stefan T. Wall; Bernard F. Hubley; McMahon,
Wall & Hubley, PLLC; Helena, Montana
(for Blue Cross and Blue Shield of Montana)

      For Appellees:

            Alexander (Zander) Blewett, III; Anders Blewett; Hoyt & Blewett, PLLC;
Great Falls, Montana

Submitted on Briefs:  August 14, 2013
Decided:  December 13, 2013

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Steve Sangwin is an employee of the State of Montana and a qualified subscriber and beneficiary of the State of Montana Employee Benefits Plan (Plan). Blue Cross and Blue Shield of Montana, Inc. (BCBS) administers the Plan. McKinley Sangwin, the daughter of Steve Sangwin and Amy Sangwin Wicks, is also a beneficiary under the Plan. This case arises out of a dispute over the denial of a preauthorization request for a medical procedure for McKinley on the grounds that the procedure was "experimental for research." The State appeals the order of the Eighth Judicial District Court, Cascade County, granting the Sangwins' motion for class certification. We affirm the court's order defining the class, but reverse and remand with respect to the question certified for class treatment.

## ISSUES

¶2 A restatement of the issues on appeal is:

¶3 *1. Did the District Court abuse its discretion in certifying the class under Rule 23(a), Montana Rules of Civil Procedure?*

¶4 *2. Did the District Court abuse its discretion in certifying the class under Rule 23(b), Montana Rules of Civil Procedure, and specifying for class treatment the question of whether the State breached its contract of insurance with the plaintiffs?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Steve Sangwin is a teacher at the Montana School for the Deaf and Blind in Cascade County, Montana. As an employee of the State, Steve is a qualified subscriber and beneficiary of the Plan. Steve and Amy's daughter, McKinley, is also a beneficiary under the Plan. McKinley was diagnosed with a severe degenerative disk disease, and

2

when she was sixteen years old, her physicians recommended that she undergo artificial disk replacement surgery. The Sangwins requested preauthorization for the procedure from BCBS, the Plan administrator. BCBS denied the request in an October 8, 2009 letter and explained that, because McKinley was a minor, BCBS considered the operation "investigational." The Plan expressly excluded investigational procedures. The letter contained a reference to the exclusions and limitations section of the Employee Benefits Summary Plan Document, which stated: "The following services and expenses are not covered: Services or procedures that are experimental procedures, as defined in Chapter 9, which are for research."[1] Under Chapter 9, an experimental procedure or service is defined as a procedure or service that "is experimental, investigational, unproven, or not a generally acceptable medical practice in the predominate [sic] opinion of independent experts utilized by the administrator of each plan."

¶6 The Sangwins appealed the decision to the BCBS Medical Review Staff. In a December 8, 2009 letter, BCBS explained that the Medical Review Staff and Associate Medical Director had reviewed the documentation related to the preauthorization request and had decided to uphold the original denial. The Associate Medical Director further clarified that artificial disks were not Food and Drug Administration approved for patients under the age of 18. The Sangwins then filed an appeal with the State of Montana. After a meeting of the Health Care and Benefits Division appeals committee on May 6, 2010, the State upheld the denial, stating that there was "no documentation

---

[1] In December 2011, the State revised its Employee Benefits Summary Plan Document to eliminate the phrase "which are for research."

from the Food and Drug Administration showing this procedure is appropriate for someone under the age of 18." Thus, the State considered it an experimental or investigational procedure that was specifically excluded under the Plan. After the denial, the Sangwins nonetheless proceeded with the proposed surgery, which was successful, incurring medical bills exceeding $55,000.

¶7 On June 8, 2010, the Sangwins initiated this action by filing a complaint in the Eighth Judicial District Court, Cascade County. The Sangwins filed an amended complaint in November 2010 and set forth five counts. The only relevant count for the purposes of this appeal is the request for certification of a class action. The Sangwins alleged that McKinley's artificial disk replacement surgery was not experimental or for research. They further alleged that BCBS and the State "have been denying the claims of participants and beneficiaries based on the experimental exclusion for research for years and years when the surgeries and other procedures were in no way meant for research and when, at best, the experimental exclusion for research is ambiguous and must be construed against Defendants." The Sangwins defined class members as "other participants and/or beneficiaries of any such Plan in Montana which have had their employee benefits denied by the State of Montana based on the experimental exclusion for research" in the past eight years.

¶8 On September 20, 2012, the District Court granted the Sangwins' motion for class certification. On November 23, 2012, the District Court entered an order defining the class as:

4

"All persons who were participants, subscribers and/or beneficiaries of the State of Montana Employee Health Plan, including the State of Montana's Blue Cross Blue Shield Managed Care Plan, the Traditional Indemnity Plan and any other health plan affiliated with the State of Montana, who have had medical benefits denied by BCBS and/or the State of Montana based on the contention that the benefits were experimental, investigational, unproven, or not generally acceptable medical practice under the language of the State of Montana Employee Benefits Summary Plan Document unless such medical benefits were 'for research' from January 1, 2003, through December 18, 2011. The class includes those individuals whose claims were denied prior to medical benefits being rendered as well as those individuals whose claims were denied after the medical benefits were rendered."

The District Court certified four claims for class treatment, including whether the State breached its contract, whether BCBS acted as an agent of the State and acted wrongfully, whether BCBS intentionally interfered with the contract between the State and Plaintiffs, and whether BCBS acted with malice. The District Court's order directed BCBS and the State to provide the Sangwins' counsel with the names and last known addresses of every potential class member.

¶9 On September 19, 2012, the District Court granted the Sangwins' motion for partial summary judgment and determined the Sangwins could pursue general tort damages against the State if they prevailed on their claim for breach of the covenant of good faith and fair dealing. That ruling is not subject to this interlocutory appeal. BCBS filed its notice of appeal on November 28, 2012, but later entered into a settlement with the Sangwins. BCBS is therefore not a party to this appeal. This being so, of the four issues certified for class treatment, the sole issue remaining so certified is whether the

State breached its contract. The State filed its notice of appeal on December 6, 2012. The State challenges the District Court's order certifying the class.

## STANDARD OF REVIEW

¶10 We review a district court's decision on a motion for class certification for an abuse of discretion. *Chipman v. N.W. Healthcare Corp.*, 2012 MT 242, ¶ 17, 366 Mont. 450, 288 P.3d 193. The question is not whether this Court would have reached the same decision, but whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason. *Chipman*, ¶ 17 (quotation marks omitted). When reviewing a decision on class certification, we afford the trial court the broadest discretion because it "is in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Jacobsen v. Allstate Ins. Co.*, 2013 MT 244, ¶ 25, 371 Mont. 393, 310 P.3d 452 (quoting *Chipman*, ¶ 17).

## DISCUSSION

¶11 *1. Did the District Court abuse its discretion in certifying the class under Rule 23(a), Montana Rules of Civil Procedure?*

¶12 The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, ___ U.S. ___, ___, 133 S. Ct. 1426, 1432 (internal citation omitted). Departure from the usual rule is justified if the class representative is part of the class and has the same interest and injury as the class members. *Jacobsen*, ¶ 27. "[C]lass action suits save the resources of courts and parties by permitting an issue potentially affecting every [class

6

member] to be litigated in an economical fashion . . . ." *Jacobsen*, ¶ 27 (internal citation omitted).

¶13    The propriety of a class action is governed by Rule 23 of the Montana Rules of Civil Procedure.    Because the Montana version of Rule 23 is identical to the corresponding federal rule, federal authority on the issue of class certification is instructive. *Chipman*, ¶ 43. Rule 23(a) sets forth four prerequisites necessary to sustain a class action:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

¶14    The party seeking certification bears the burden of establishing each element of Rule 23(a). *Chipman*, ¶ 43 (citation omitted).  Failure to establish the requisite elements is fatal to class certification. *Chipman*, ¶ 43.  In addition to satisfying the requirements of Rule 23(a), a party must satisfy at least one of the provisions of Rule 23(b).  M. R. Civ. P. 23(b).

¶15    When deciding whether to certify a class, a district court should not assess any aspect of the merits unrelated to a Rule 23 requirement. *Chipman*, ¶ 44.  It "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp.*, ___ U.S. at ___, 133 S. Ct. at 1432 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, ___, 131 S. Ct. 2541, 2551 (2011) (internal quotation omitted)).  "[C]ertification is proper only if the trial court is satisfied, after a

7

rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Comcast Corp.*, ___ U.S. at ___, 133 S. Ct. at 1432 (quoting *Wal-Mart*, 564 U.S. at ___, 131 S. Ct. at 2551 (internal quotation omitted)). A "rigorous analysis" frequently entails some "overlap with the merits of the plaintiff's underlying claim" because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp.*, ___ U.S. at ___, 133 S. Ct. at 1432 (quoting *Wal-Mart*, 564 U.S. at ___, 131 S. Ct. at 2551-52 (internal quotation marks omitted)). Actual, not presumed, conformance with Rule 23(a) is indispensable. *Wal-Mart*, 564 U.S. at ___, 131 S. Ct. at 2551 (internal citation omitted).

¶16 In evaluating the Rule 23 requirements, the District Court properly looked beyond the pleadings to the extent necessary to determine the propriety of class certification. The District Court reviewed numerous briefs, motions, objections, and over 150 of the proposed class members' preauthorization request denial letters. The District Court also held a hearing on the motion for class certification where attorneys for the Sangwins, the State, and BCBS appeared and presented arguments. We hold that the District Court did not abuse its discretion in certifying this lawsuit as a class action. Each relevant aspect of the Rule 23(a) inquiry is discussed below in further detail.

A. **Rule 23(a)(1)—Numerosity**

¶17 The State does not dispute that the number of Plan participants, subscribers, or beneficiaries denied preauthorization requests for procedures that were allegedly experimental, investigational, unproven, or not generally acceptable meets the numerosity

requirement.  Rule 23(a)(1) requires a proposed class to be "so numerous that joinder of all members is impracticable."  "[P]laintiffs must present some evidence of, or reasonably estimate, the number of class members."  *Diaz v. Blue Cross & Blue Shield*, 2011 MT 322, ¶ 31, 363 Mont. 151, 267 P.3d 756.  Though the parties dispute the number of potential class members and the requirements for inclusion in the class, the District Court concluded it was "clear that the numerosity element is met because the State and BCBS denied benefits based upon the 'experimental for research' exclusion in the State Plan and Managed Care Supplement Plan well over one-hundred times."  The District Court determined the large number of potential class members made joinder impracticable.  We conclude the District Court did not abuse its discretion in concluding that the Sangwins have successfully satisfied the numerosity requirement.

### B.    Rule 23(a)(2)—Commonality

¶18    The State does not dispute that the commonality requirement is met.  The element of commonality requires "questions of law or fact common to the class."  M. R. Civ. P. 23(a)(2).  Though the requirement has historically placed a relatively low burden on plaintiffs, *Jacobsen*, ¶ 31, the U.S. Supreme Court "significantly tightened the commonality requirement" in *Wal-Mart*.  *Chipman*, ¶ 47.  The claims of class members and class representatives "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution," "mean[ing] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at ___, 131 S. Ct. at 2551.

9

¶19     The District Court determined that the class members raised common questions of fact and law. The District Court identified both a uniform course of conduct by the State and BCBS in denying benefits based upon the "experimental for research" exclusion and a common question of law of whether such denial was unlawful. The District Court concluded that the questions of fact and law raised by the Sangwins were sufficient to satisfy the commonality requirement and support class certification. Though the District Court relied upon the standard Montana followed prior to *Wal-Mart*, this requirement is met even under *Wal-Mart*'s more stringent standard. All class members are connected by the denial of a preauthorization request based on the same exclusion. These common facts are related to the ultimate resolution of the dispute, namely the determination of whether such denial was wrongful.

¶20     We conclude that the court correctly found that the class members are connected by the denial of a preauthorization request based upon the same exclusion, and that this common connection satisfies the commonality requirement. For the reasons set forth below, however, we do not agree that there exists a predominant question of whether the denial was wrongful.

C.     **Rule 23(a)(3)—Typicality**

¶21     To satisfy the typicality element, a plaintiff must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." M. R. Civ. P. 23(a)(3). The typicality requirement is designed to ensure that the interests of the named plaintiffs align with the interests of the class members, "the rationale being

10

that a named plaintiff who vigorously pursues his or her own interests will necessarily advance the interests of the class." *Mattson v. Mont. Power Co.*, 2012 MT 318, ¶ 21, 368 Mont. 1, 291 P.3d 1209 (*Mattson III*) (citing *Chipman*, ¶ 53). Typicality is not a demanding standard, and a named plaintiff's claim is typical if it "stems from the same *event*, *practice*, or *course of conduct* that forms the basis of the class claims and is based upon the same legal or remedial theory." *Diaz*, ¶ 35 (quotation omitted; emphasis in original). The event, practice, or course of conduct need not be identical. *Diaz*, ¶ 35. The typicality requirement "tends to merge" with the commonality requirement. *Jacobsen*, ¶ 51 (internal citation omitted). It "prevents plaintiffs from bringing a class action against defendants with whom they have not had any dealings." *Jacobsen*, ¶ 51 (citing *Diaz*, ¶ 35).

¶22 The District Court concluded the Sangwins successfully established typicality. It was irrelevant to the District Court that McKinley had surgery despite the preauthorization denial because the Sangwins still suffered the same harm as the class members. The District Court found a patterned course of conduct similar to the course of conduct in *Diaz*. Typicality was satisfied in *Diaz* because the State's practice of employing its exclusion to third-party liability coverage constituted an event, practice, or course of conduct that the class representatives shared with the class. *Diaz*, ¶ 36.

¶23 The State argues that the Sangwins mistakenly equate commonality with typicality, and that the facts behind the Sangwins' claims are unique. Specifically, it notes that the Sangwins decided to go forward with treatment and incur medical bills,

11

presumably unlike many potential plaintiffs, and that McKinley was the only underage patient for whom coverage was sought for implanting artificial intervertebral discs from 2003 to 2010. The State argues no typicality exists because the procedures denied by BCBS varied greatly and some denials were made properly. According to the State, this requirement is not met because each denial will require individual review.

¶24 The Sangwins contend "[t]he State has simply ignored the law on typicality under almost identical facts," including our decision in *Diaz*. The Sangwins acknowledge that facts vary among the class members. For example, the amount of damages, the desired procedure, and the timing of the denial inevitably vary. However, they argue that the Sangwins had the same dealings with the State as the putative class members, and that they all were wrongly denied benefits under the same exclusion, an exclusion the State misconstrued and misapplied in the same manner for each claim. The Sangwins argue typicality is not destroyed by the individual assessment of damages or by some variation between the claims of the Sangwins and the class members.

¶25 In its reply brief, the State counters that the Sangwins mistakenly rely on *Diaz* when the issues and relief sought differ. The State again argues that the Sangwins' decision to proceed with the surgery and incur medical bills destroys typicality. According to the State, the District Court did not engage in the required "rigorous analysis."

¶26 The State misses the point of the typicality requirement by raising issues with the specific facts of the Sangwins' claim. "Typicality refers to the nature of the claim or

12

defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). The Sangwins are members of the class as defined by the District Court. McKinley was denied preauthorization for a medical procedure under the "experimental for research" exclusion. The Sangwins allege the State systematically applied the exclusion to wrongfully deny benefits. The Sangwins' claim is based on the same legal theory as the proposed class members' claims. Despite the State's contentions, the specifics of McKinley's injuries or treatment do not render her atypical of the class. The District Court conducted a "rigorous analysis;" it probed beyond the pleadings and determined this element actually was met. We conclude the District Court did not abuse its discretion in concluding that the Sangwins have met the typicality requirement.

### D. Rule 23(a)(4)—Adequate Representation

¶27 The State does not dispute that this requirement is met. Montana Rule of Civil Procedure 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation requires that the named representatives' attorney is qualified, competent, and able to conduct the litigation, and that the named representatives' interests are not antagonistic to the class interests. *Chipman*, ¶ 57 (citation omitted).

¶28 The District Court determined the law firm of Hoyt & Blewett PLLC was qualified and competent counsel. The District Court further determined the Sangwins' interests were aligned with the class's interests. We conclude that counsel will

13

adequately represent the class, and that no conflicts exist between the Sangwins and the class members.

¶29 *2. Did the District Court abuse its discretion in certifying the class under Rule 23(b), Montana Rules of Civil Procedure, and specifying for class treatment the question of whether the State breached its contract of insurance with the plaintiffs?*

¶30 Having determined that the Rule 23(a) prerequisites are satisfied, we now turn our inquiry to Rule 23(b). The District Court determined that the proposed class met the two requirements of Rule 23(b)(3). It is on the basis of the requirements of this rule that we reverse and remand with respect to the certified question.

¶31 Rule 23(b)(3) requires a court to "find[] that the questions of law or fact common to the class members predominate over any questions affecting only individual members." In addition, a court must find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." M. R. Civ. P. 23(b)(3). Matters pertinent to these findings include the class members' interests in individually controlling separate actions, the extent and nature of any already existing litigation concerning the controversy, the desirability or undesirability of concentrating the litigation in a particular forum, and likely difficulties in managing a class action. M. R. Civ. P. 23(b)(3)(A)-(D). A central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy. *Mattson III*, ¶ 39 (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotation omitted)).

¶32 The District Court determined class certification was appropriate because class members may not have the knowledge or resources to bring the claims individually or may be subject to the requirement of exhausting administrative remedies prior to seeking judicial relief. The District Court noted that there was no other litigation concerning the issue, and that a class action suit would be conducive to complex healthcare litigation. After acknowledging the existence of individual issues, such as damages, the District Court concluded that common questions of law or fact nonetheless predominated because BCBS and the State engaged in systematic conduct and the Sangwins and the class members suffered the same or similar injuries.

¶33 The State argues the District Court failed to make any findings of fact for Rule 23(b)(3) purposes. The State contends that common issues do not predominate because there were 158 temporally different decisions, and preauthorization denials and damages will need to be investigated individually.

¶34 The Sangwins contend that individual calculation of damages should not preclude class determination when common liability issues predominate. They further argue the District Court's finding was supported by its "determination that the State's systematic conduct of misconstruing the exclusion and denying claims under the same exclusion is the predominant issue of law and fact and that Sangwin and every putative plaintiff suffered a similar injury." The State counters that the District Court only superficially analyzed the predominance factors and failed to meet the federal standard set forth in *Wal-Mart* and *Comcast*.

¶35    As indicated, the Sangwins contend the court properly certified the question of whether the State breached its contract with the plaintiffs, and that common liability issues predominate.  In this connection, they maintain in their response brief that "[i]f individuals' claims were properly denied because the medical service was 'for research,' those members will not be a part of the class specially defined by the [District Court.]"  Otherwise stated, only those individuals whose requested services were *not* for research will remain in the class, and the court can then decide if the denial of services to these persons constituted a breach of contract.  Herein lies the problem with the question certified by the District Court for class resolution.

¶33    In order to make the determination of whether an individual's claims were properly denied, each claim—together with its underlying documentation including the Consent Form and supporting affidavits—will have to first be separately analyzed.  As the Sangwins concede, this will have to be done before there can be a determination as to whether the individual will be part of the class, and it will clearly have to be done before there can be an assessment of whether the State breached its contract with that individual.

¶34    Because factual questions must be answered on an individual basis before the plaintiffs will be in a position to establish liability, the predominance requirement under Rule 23(b)(3) is not met.  *In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, 2013 U.S. Dist. LEXIS 126028, 30-39 (D. Mass., Sept. 4, 2013) (where factual questions are not susceptible to routine resolution and must be answered on an individual basis before the plaintiffs can establish liability, predominance is not

16

satisfied). Again, Rule 23(b)(3) requires a court to "find[] that the questions of law or fact common to the class members predominate over any questions affecting only individual members." Common issues must therefore be more prevalent than individual issues. While we agree with the plaintiffs that the necessity to assess damages on an individual basis does not necessarily defeat class action treatment, here there is undeniably a preliminary need for an individual determination of whether each individual qualifies as a class member. As we observed in *Chipman*, ¶ 48, class determination is appropriate when the class members' claims "depend on a common contention that is capable of classwide resolution." The question certified by the District Court is whether the State breached its contract with the plaintiffs. This question cannot be answered until after individual assessments are made; therefore, the certified question is incapable of being resolved on a classwide basis.

¶35 This is not to say that the class itself was improperly certified. Rather, it is the formulation of the certified issue that results in individual issues predominating over common questions. There is seemingly one common issue of law critical to the entire class, and that is the construction of the State Plan's exclusion language. The construction of the language in the exclusion and definitions sections of the Plan may well present a common issue of law that would be appropriate for class consideration. However, it is not the province of this Court to formulate the certified question.

¶36 For the foregoing reasons, we decline to disturb the District Court's certification of the class under the Rule 23(a). However, we reverse the District Court's certification

of the plaintiffs' claim as to "[w]hether the State of Montana breached its contract" because it fails to satisfy the predominance requirement of Rule 23(b)(3). We remand to allow the District Court to consider whether a particular issue may be certified for which individual questions would not predominate.

## CONCLUSION

¶37   Affirmed in part and reversed in part.


/S/ PATRICIA COTTER


We concur:


/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ BRIAN MORRIS


Justice Laurie McKinnon, concurring in part and dissenting in part.

¶38   The Court reverses the District Court's certification of a class claim—namely, "[w]hether the State of Montana breached its contract"—because this claims fails to satisfy the predominance requirement of Rule 23(b)(3). Opinion, ¶ 36. I agree with this holding. Our conclusion that "factual questions must be answered on an individual basis before the plaintiffs will be in a position to establish liability," Opinion, ¶ 34, is correct and is fatal to class certification under Rule 23(b)(3)'s requirement "that the questions of

law or fact common to the class members predominate over any questions affecting only individual members."

¶39 The Court, however, affirms the District Court's certification of the class under Rule 23(a). Opinion, ¶ 36. I dissent from this holding. I do not agree that the requirements of commonality and typicality have been met, and I also disagree with our conclusion that class certification is appropriate before a plausible common question of law or fact has even been identified. Although the Court reverses the District Court for certifying the question of whether the State breached its contract with the proposed class members, finding that this question "is incapable of being resolved on a classwide basis," Opinion, ¶ 34, the Court nevertheless determines that commonality has been met because "[a]ll class members are connected by the denial of a preauthorization request based upon the same [policy] exclusion," Opinion, ¶ 19, and that typicality has been met because the Sangwins' claim "is based on the same legal theory as the proposed class members' claims," Opinion, ¶ 26.[2] It is my opinion that the Court goes astray in determining that a class action may be certified despite the absence of a common question of law or fact capable of generating an answer meaningful to the litigation. I cannot reconcile our analysis with that set forth in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S. Ct. 2541 (2011), and other decisions evaluating compliance with Rule 23's requirements.

¶40 The State's liability to the Sangwins for insurance benefits "arises from the terms of the insurance contract, and its contractual relationship with its insured." *Farmers*

---

[2] Other than breach of contract, I have been unable to discern any other legal theory offered by the Sangwins.

*Alliance Mut. Ins. Co. v. Holeman*, 1998 MT 155, ¶ 21, 289 Mont. 312, 961 P.2d 114.

"[I]f the language is clear and explicit this Court may not rewrite an insurance contract, but must enforce it as written." *Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 30, 304 Mont. 356, 22 P.3d 631. The Plan expressly excluded "experimental procedures or services," which are defined in Chapter 9 of the Plan's benefits as follows:

> Treatment, which is considered experimental because it meets one of the following criteria:
>
> 1. Prescription drugs not approved by the FDA to be lawfully marketed for the proposed use, and it is not identified in the American Hospital Formulary Service, the AMA Drug Evaluation, or the Pharmacopoeia as an appropriate use.
>
> 2. It is subject to review or approval by an institutional review board (meaning that a hospital considered it experimental and put it under review to meet federal regulations, or review is required and defined by federal regulations, particularly those of the FDA or Department of Health and Human Services).
>
> 3. It is the subject of an ongoing clinical trial that meets the definition of a Phase 1, 2, or 3 clinical trial set forth in FDA regulations, regardless of whether it's an FDA trial.
>
> 4. It has not been demonstrated through prevailing, peer-reviewed medical literature to be safe and effective for treating or diagnosing the condition or illness for which its use is proposed.
>
> 5. The predominant opinion among experts as expressed in the published authoritative literature is that further research is necessary in order to define safety, toxicity, and effectiveness (or effectiveness compared with conventional alternatives), and/or that usage should be substantially confined to research settings.
>
> 6. It is not a covered benefit under Medicare as determined by the Centers for Medicare and Medicaid Services (CMMS, formerly HCFA) because it is considered experimental, investigational, or unproven.

7. It is experimental, investigational, unproven, or not a generally acceptable medical practice in the predominate opinion of independent experts utilized by the administrator of each plan.

8. It is not experimental or investigational in itself pursuant to the above and would not be medically necessary, but it is being provided in conjunction with the provision of a treatment, procedure, device, or drug which is experimental, investigational, or unproven.

¶41 McKinley Sangwin, a beneficiary under the Plan, was denied preauthorization because she was a minor and the procedure for which she sought coverage—artificial disc replacement—was considered experimental. It was explained to the Sangwins that artificial discs were not FDA-approved for patients under 18 and that the procedure was therefore excluded from coverage. The denial letter stated: "Per BCBSMT medical policy, the patient must be greater than 18 years of age and skeletally mature to qualify for benefits. Therefore, this is considered investigational. There are significant questions remaining about potential long-term complications in such a young patient."

¶42 Of the 158 claims that BCBS denied because they were for experimental procedures, McKinley's claim is the only one denied for a minor seeking an artificial disc replacement. Dr. M.E. Berner, BCBS's Medical Director, provided his affidavit setting forth the variety of services, supplies, drugs, or devices that were denied because they were considered to be investigational:

> Clinical Trial - Chemotherapy (MRI-Echo, ECG, CT Scan, Labs, UA); PET Scan (breast cancer, ovarian cancer, renal cell cancer, prostate cancer, bladder cancer, lung nodules); Ketamine; GlucoWatch; Hyperbaric Oxygen Pressurization; Mercury Detoxification and Chelation Therapy; Endocinch Procedure (gastroesophageal reflux disease); Group Therapy and

21

Craniosacral Therapy; Outpatient Pain Clinic; Lengthen Roux Limb of Small Intestine; Cool Touch Laser Treatment (acne); Botox injections (myofacial pain syndrome, headache, migraines, neck pain, neck spasm, whiplash, back pain, neuromuscular pain, Raynaud's disease, excessive salivation); Orthotripsy ESW (Plantar Fasciitis); Allergen Specific Food lgG Quantitative or Semiquantitive Testing; Neuromuscular Stimulator; Extracorporeal Shockwave Therapy; Hyperthermic Procedure; IV Therapy with Albumin; F-Scan; gait analysis; Phentermine; NM III 2 Channel Muscular Stimulator (muscle strengthening); Physical Performance Test; L4-5 Anterior Exposure Artificial Disc Placement; Genetic Testing; Computerized Dynamic Posturography; Sclerotherapy; Physical Therapy (chronic pelvic pain syndrome and chronic prostatitis); Laser Treatment (Rosacea); Hormone Pellet Implant; Virtual Colonoscopy; High-Dose Indium-111 (Octreotide) Therapy; Ocular Motor Therapy; BRAVO pH Study (catheter-free, wireless esophageal monitoring); Neurofeedback; X STOP Procedure; Meniett Device (Menieres disease); Nucleoplasty (Percutaneous Diskectomy) with Fluoroscopic Guidance; Sublingual Immunotherapy; LifeVest Automatic Wearable Defibrillation System; Pulsed Dye Laser Treatments (acne); MRI (breast); Second Radiofrequency Ablation and Travel (ablation of metastatic liver tumors); Avastin (ovarian cancer); Cognitive Therapy; CT Angiogram-Coronary (coronary arteries, atypical chest pain, abnormal stress test); Contrast-Enhanced Computed Tomographic Angiography; Phototherapeutic Keratectomy (PTK) (recurrent corneal erosions); Cervical Disk Replacement; Y-90 Mesenteric Mapping (cancer); Mobile Cardiac Outpatient Telemetry (MCOT) (event monitor); Synvisc Injection (hip joint); Oral Immunoglobulin Therapy (Norwalk Virus); Rituxan (Lupus); NESS L300 Foot Drop System Lower Extremity Stimulator Unit (muscle strengthening); Laparoscopic Cryoablation (renal mass); B-39 Study (breast cancer); Reclast (osteoporosis); Internal Radiation Therapy; Continuous Passive Motion Device (shoulder); Implantable Neurostimulator (occipital neuralgia); Thermography (breast screening); Posture Pump; Biofeedback (bladder outlet obstruction); Steriotactic Radiosurgery (metastic phyllodes tumor of breast); Remicade (arthritis); Magnetic Treatment (incontinence); Collection & Storage of Peripheral Blood Stem Cells (brain tumors); X-Stop (distraction/decompression device); Stereotactic Body Radiation Therapy (metastatic lung tumors); Artificial Disc; Excimer Laser Treatment

(vitiligo); Avastin; BRCA Testing (genetic testing); Zometa (bisphosphonates); IMRT (radiation therapy); Vest Compression Device/Supplies (secretions and upper respiratory infection); Neuromuscular Electrical Stimulation Device (muscular weakness); Stereotactic Surgery (brain surgery to treat melanoma); BEST Clinical Trial; Sublingual Allergy Drops; IMRT (breast); Avastin and Abraxane (ovarian cancer); Transcatheter Closure of PFO; Stem Cell Transplant; Cetuximab (metastatic cholangiocarcinoma); Pharmacogenetic Testing; Occipital Nerve Stimulator.

¶43 I have set forth the above factual matters because we are required to "probe behind the pleadings" to the extent necessary to decide the certification question." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372 (1982). "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Falcon*, 457 U.S. at 160, 102 S. Ct. at 2372. Rigorous analysis is necessary because, as has been observed, " '[a]ny competently crafted class complaint literally raises common "questions." ' " *Wal-Mart*, 131 S. Ct. at 2551 (brackets in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-32 (2009)). Examples of such questions include: "Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?" *Wal-Mart*, 131 S. Ct. at 2551. Reciting these sorts of questions "is not sufficient to obtain class certification." *Wal-Mart*, 131 S. Ct. at 2551. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," which "does not mean merely that they have all suffered a violation of the same provision of law"—or, as here, the same provision of a contract. *Wal-Mart*, 131

23

S. Ct. at 2551 (internal quotation marks omitted). Because the class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only, *Wal-Mart*, 131 S. Ct. at 2550, the class action device is appropriate only where "[t]he issues involved are common to the class as a whole" and "[t]hey turn on questions of law [or fact] applicable in the same manner to each member of the class," *Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S. Ct. 2545, 2557 (1979).

¶44 Here, although the District Court and this Court conclude that there exists "a uniform course of conduct by the State and BCBS in denying benefits based upon the 'experimental for research' exclusion," Opinion, ¶ 19, alleging that the State uniformly applied a provision of the insurance contract, absent anything more, does not create a common question of law or fact. A common question of law or fact is not generated merely by the Sangwins' allegations that they are part of a group of insureds who have had a particular contract provision applied adversely to them. Moreover, the Sangwins' allegation that they were *wrongfully* denied coverage does not advance their claim that a class action is appropriate. No legal theory, programmatic exclusion, policy, pattern, practice, or conduct that could establish a wrong or liability to the class as a whole has been alleged. The Sangwins' contention is indistinguishable from *any* insured who alleges that she was wrongfully denied benefits under the Plan and who, for that reason alone, proposes a class action and asserts commonality by virtue of being an insured.

¶45 A review of the Plan's applicable policy provisions and the reasons for denials clearly demonstrates that the language of the "experimental"-exclusion provision is both

24

detailed and factually driven, and that the denials of the 158 claims were based on assessments of each individual illness and the type of procedure for which coverage was sought. The Court recognizes this fact in observing that, "[i]n order to make the determination of whether an individual's claims were properly denied, each claim—together with its underlying documentation including the Consent Form and supporting affidavits—will have to first be separately analyzed." Opinion, ¶ 33. Yet, contrary to the requirement of a "rigorous analysis," *Comcast Corp. v. Behrend*, 569 U.S. ___, 133 S. Ct. 1426, 1432 (2013) (internal quotation marks omitted), nothing has been alleged or demonstrated here which supports a determination by the District Court that a program or practice exists for the denials, thereby generating a common question.

¶46 The facts of this case are distinguishable from our prior cases in which we have held that a class action is appropriate. *See McDonald v. Washington*, 261 Mont. 392, 862 P.2d 1150 (1993) (common question of law as to whether the defendant breached a duty owed to class members to provide adequate water and service rendered class action appropriate); *Ferguson v. Safeco Ins. Co. of Am.*, 2008 MT 109, 342 Mont. 380, 180 P.3d 1164 (class action appropriate to determine whether insurer programmatically breached the duty to conduct a made-whole determination prior to subrogation); *Diaz v. Blue Cross & Blue Shield of Mont.*, 2011 MT 322, 363 Mont. 151, 267 P.3d 756 (whether employees' made-whole rights were violated by the State's programmatically failing to conduct a made-whole analysis before exercising subrogation rights was appropriate for class action); *Chipman v. Northwest Healthcare Corp.*, 2012 MT 242, 366 Mont. 450,

25

288 P.3d 193 (whether an enforceable standardized group employment contract exists and what the parties' legal obligations are under the contract would generate common answers applicable to all class members); *Mattson v. Mont. Power Co.*, 2012 MT 318, 368 Mont. 1, 291 P.3d 1209 (whether the power company operated Kerr Dam unreasonably and caused unreasonable damage to shoreline properties was incapable of being resolved on an individual basis and was appropriate as a class action).

¶47    In all of these cases, there was a question of law or fact common to each member of the class that advanced, to some degree, the litigation of each class member's claim. In *Ferguson* and *Diaz*, the insurer's obligation of to conduct a made-whole analysis prior to subrogation applied to everyone and existed whether or not the insurance contract addressed made-whole rights.  The common question was generated by the insurer's alleged programmatic conduct of subrogating first, ahead of the insured's made-whole rights.  In *McDonald*, everyone in the class was drinking the same water in Butte.  In *Mattson*, the dam operator could select only one elevation at which to maintain the lake at any given time, and that elevation necessarily applied to and affected all shoreline properties simultaneously.  In *Chipman*, common questions concerning the employment contract applied to everyone equally and concerned coverage issues that were not factually driven by individual circumstances.  The answer to the various common questions advanced the litigation as a whole and, to some degree, each class member's claim.  The distinction to be drawn between these cases and the current dispute is that, here, the Sangwins have presented no common contention "that it is capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. Merely being "connected" by the denial of a preauthorization request based on the "experimental" exclusion, Opinion, ¶ 20, does not generate a common question where, as the Court acknowledges, the question of whether class members' claims were improperly denied under this exclusion must be made on an individual basis, Opinion, ¶¶ 33-34.

¶48    I understand the desire of the Plaintiffs to have this matter proceed as a class action. The denial of benefits for an admittedly successful medical procedure on behalf of a child cries out for a remedy and a method to prevent future hardship. Such a plea, however, without anything more than a denial under a particular policy exclusion, does nothing to further the requirements of Rule 23(a). In *Falcon*, for example, the Supreme Court acknowledged that "racial discrimination is by definition class discrimination." 457 U.S. at 157, 102 S. Ct. at 2370. However, the Supreme Court concluded:

> [T]he allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified. Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. For respondent to bridge that gap, he must prove much more than the validity of his own claim. Even though evidence that he was passed over for promotion when several less deserving whites were advanced may support the conclusion that respondent was denied the promotion because of his national origin, such evidence would not necessarily justify the

27

additional inferences (1) that this discriminatory treatment is typical of petitioner's promotion practices, (2) that petitioner's promotion practices are motivated by a policy of ethnic discrimination that pervades petitioner's Irving division, or (3) that this policy of ethnic discrimination is reflected in petitioner's other employment practices, such as hiring, in the same way it is manifested in the promotion practices.

*Falcon*, 457 U.S. at 157-58, 102 S. Ct. at 2370-71 (footnote omitted).

¶49 As indicated, the crux of this case is the lack of a question of law or fact common to the class, as required by Rule 23(a)(2), and whether the Sangwins' claim is typical of the class claims pursuant to Rule 23(a)(3). Although the State argues the impropriety of class certification primarily under the headings of "typicality" and "predominance," the State's substantive arguments include discussions of "commonality." In this regard, we have recognized that the requirements of Rule 23 tend to merge given the facts of the particular case. Opinion, ¶ 21.[3] The State, moreover, urges this Court to apply the commonality standard set forth in *Wal-Mart* rather than the less stringent commonality standard set forth in cases such as *Ferguson*. We again avoid this issue by holding (incorrectly, in my view) that commonality is met under either standard. Opinion, ¶ 19; *see also Jacobsen v. Allstate Ins. Co.*, 2013 MT 244, ¶ 33, 371 Mont. 393, 310 P.3d 452.

---

[3] *See also Falcon*, 457 U.S. at 157 n. 13, 102 S. Ct. at 2370 n. 13 ("The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest."); *McDonald*, 261 Mont. at 402, 862 P.2d at 1156 (typicality is closely related to both commonality and adequacy of representation).

¶50    In any event, it is the responsibility of the trial court to determine whether all requirements of Rule 23(a) and (b) have been satisfied. Opinion, ¶ 15 (citing *Comcast*, 133 S. Ct. at 1432, and *Wal-Mart*, 131 S. Ct. at 2551). This Court must review a district court's determinations despite our perception that a party has not disputed a particular requirement. Here, in my view, we create confusion in our class-action jurisprudence by, on one hand, reversing the District Court's articulation of a common question of law or fact (breach of contract) while, on the other hand, affirming the District Court's conclusion that commonality and typicality have been met. While certainly there may exist a factual scenario that substantiates the existence of commonality and typicality, but not predominance, that scenario cannot exist where, as here, the District Court has been reversed on its determination of the common question. In bifurcating the common question required by Rule 23(a)(2) from the common question that must predominate under Rule 23(b)(3)—an approach for which our Opinion cites no authority—I fear we have made it difficult for the District Court in this litigation to know how to proceed, have failed to provide clear guidance regarding the parameters of class-action litigation, and have created inconsistencies within Rule 23 itself.

¶51    Therefore, although I agree with the Court's holding that Rule 23(b)(3)'s predominance requirement is not met here, I disagree with our conclusion that the commonality and typicality requirements of Rule 23(a)(2) and (a)(3) have been satisfied. While the Court remands "to allow the District Court to consider whether a particular issue may be certified for which individual questions would not predominate" pursuant to

Rule 23(b)(3), Opinion, ¶ 36, I believe the District Court necessarily must determine first, as a threshold matter, whether there is a question of law or fact common to the class under Rule 23(a)(2) and whether the Sangwins' claim is typical of the class claims under Rule 23(a)(3). I would reverse the District Court's certification order in its entirety and remand accordingly.

¶52 I concur and dissent.

/S/ LAURIE McKINNON


Justice Jim Rice joins the Concurrence and Dissent of Justice Laurie McKinnon.


/S/ JIM RICE